## Commonwealth v. McClanahan.

(Decided April 25, 1913.)

### Appeal from Campbell Circuit Court.

1. Sweating—Act to Prevent—Construction of Act.—The act entitled, "An act to prevent sweating process of prisoners arrested charged with crime, and to prevent the admission as evidence of confessions obtained by such process in the State of Kentucky." Approved March 19, 1912, is not unconstitutional. It merely provides a rule of evidence and procedure by which the courts are to be governed, and prescribes punishment for those who employ the methods therein condemned. It is neither unreasonable nor oppressive but was designed to protect the individual citizen in a right guaranteed by Section 11, Bill of Rights, Constitution, which declares, "He cannot be compelled to give evidence against himself."

2. Sweating—Act to Prevent—Object—Examination of Person Under Arrest.—The "sweating" prohibited by the act may be done by

the mere questioning of the person under arrest, charged with or suspected of crime, if such questioning be done for the purpose, and has the effect, of extorting from him, (i. e. inducing an involuntary or unwilling giving of) information to be used against him on his trial for such alleged crime, and if so procured it is inadmissible as evidence. The object of the act is to prevent the modern methods obtaining among detectives and arresting officers, which, though less harsh, are equally as effective as threats and intimidation for inducing confessions, condemned by the common law.

3. Sweating—Confession—Proof of Inadmissible Unless Voluntarily Made.—Proof of a confession is never admissible as evidence, unless voluntarily made; that is it must be made of the free will and accord of the defendant, without coercion, whether from fear of any threat of harm, promise or inducement by hope of reward or method known as "sweating." Where, as in this case, the detective laid a deliberate plan to entrap the defendant into a confession and the circumstances under which the confession was made, make it apparent, that it resulted from methods both artful and deceptive, that must have so agitated the mind of the defendant and aroused his fear as to have had a coercive effect, proof of such confession was properly excluded by the trial court, for it can well be said that the method employed to procure it constituted "sweating" in the meaning of the legislative act.

4. Confession—Evidence of Admissible When Voluntarily Made.— Evidence of a confession, even when made to an arresting or other peace officer, by a person under arrest, charged with crime, is admissible when voluntarily made; but it should clearly be made to appear that it came from the defendant under such circumstances as show it to have been made of his free will and accord, with full and perfect knowledge of its nature and consequences, free from the dictation, coercion or inducement of others.

JAMES GARNETT, Attorney General, M. M. LOGAN, Assistant Attorney General for appellant.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

Notwithstanding its success in convicting appellee of house-breaking under an indictment charging him with that crime, appellant, Commonwealth of Kentucky, being dissatisfied with the ruling of the Circuit Court in excluding certain evidence offered by it on the trial, of an alleged confession of his guilt made by appellee, by this appeal seeks a review of that ruling.

The evidence in question consisted of a conversation or conversations had with appellee by J. B. Sheeran, a detective and police officer of the City of Newport, after the arrest of the former and while he was in the custody

of that officer. When objection was made to the evidence of Sheeran, the trial court required the jury to be taken from the room in charge of the sheriff, and in their absence had the detective state the conversation he had with appellee, which was thereupon declared incompetent by the court and not permitted to go to the jury, to which the Commonwealth at the time excepted.

The conversation occurred in the presence of Sheeran's partner, Cottingham, and was in part heard by Lieutenant Bloomfield, of the city police force.

It appears from the record that appellee was jointly indicted with one Omer Norman, for feloniously breaking into and stealing from the office of the Crystal Ice Company, $64.00 in money; also that appellee at the time Sheeran talked with him was under arrest for disorderly conduct, of which he was guilty, while riding in an automobile he had rented, and that Sheeran, because of information he had received as to appellee's having been seen about the Ice Company's premises, his well known pecuniary inability to hire an automobile and his bad reputation, was led to suspect that he had obtained the money with which to hire the automobile by stealing it from the office of the Crystal Ice Company; therefore, in following out the supposed clue thus obtained, Sheeran proceeded to interview and question appellee for the purpose of ascertaining whether he was guilty of the housebreaking referred to. The conversation in which was made the alleged confession, was held in what is known as the "detective's room" after appellee had been confronted by Norman, and resulted in a full confession of his guilt of the housebreaking and Norman's participation therein.

The testimony of Sheeran as to the questions he put to appellee and the answers of the latter thereto, together with his explanation of the means employed to obtain the confession, take up twelve pages of the bill of evidence, for which reason it cannot be reproduced in the opinion without unduly extending its length.

It is apparent from Sheeran's testimony that he set out to procure from appellee a confession of his guilt and his first step was to obtain from him, by questioning him, certain statements to the effect that one Conoth, who had been arrested with him, had hired the automobile. He then interviewed Conoth who contradicted the statements of the appellee, which contradiction Sheeran immediately reported to appellee. This was followed by a continua-

tion of his interrogation of him until he got from him the statement that he had himself hired the automobile at the price of $3.00 and had obtained the money by selling some furniture. Thereupon Sheeran told him he could not have hired the automobile at such a low price. In the course of the conversation Sheeran informed appellee of some one's breaking into the Crystal Ice Company's office and the taking of the money therefrom, and asked him if he did it; appellee then denied that he had done so, but later admitted it after being contradicted in the manner indicated.

It was denied by Sheeran that he made to appellee any promise or offered him any reward to induce the confession of his guilt, or that it was made as the result of threats or coercion from him.

Evidence as to the confession thus obtained of appellee was excluded by the trial court on the ground that its inadmissibility is declared by an act of the Legislature, approved March 19, 1912, entitled "An act to prevent sweating process of prisoners arrested charged with crime, and to prevent the admission as evidence of confessions obtained by such process in the State of Kentucky," which provides:

(1) "That what is commonly known as 'sweating' is hereby defined to be the questioning of a person in custody charged with crime in an attempt to obtain information from him concerning his connection with crime or knowledge thereof, after he has been arrested and in custody, as stated, by plying him with questions or by threats or other wrongful means, extorting from him information to be used against him as testimony upon his trial for such alleged crime.

(2) "It shall be unlawful for any sheriff, jailer, marshal, constable, policeman or other officer, or any peace officer, or any person having in his custody any person charged with crime, to sweat such person or permit any other person so to do, while such prisoner is in charge of such officer or in the custody of the law, charged with an offense.

(3) "That no confession obtained by means of sweating as defined herein, shall be permitted as evidence in any court of law in this State, but shall be deemed to have been obtained by duress, if it be shown that such confession was made after the arrest of the party charged with crime, and while he was in custody of the law.

(4)   ''Any person violating the provisions of this act shall, upon conviction, be fined in an amount not less than one hundred dollars nor more than five hundred dollars, or confined in the county jail not less than ten nor more than sixty days, or both such fine and imprisonment in the discretion of the court or jury trying the case.

(5)   ''All laws or parts of laws in conflict with this act are hereby repealed.

''This act shall take effect from and after its passage.''

The constitutionality of this statute is questioned by counsel for the Commonwealth and he also argues that the methods employed by Sheeran are not within the scope of its condemnation.   Neither of these contentions can be sustained.

It will be observed that the ''sweating'' prohibited by the act may be done by the mere questioning of the person under arrest charged with crime concerning his connection therewith or knowledge thereof, if it be done for the purpose of extorting from him (i. e., inducing an unwilling or involuntary giving of) information to be used against him on his trial for such alleged crime.   In enacting this statute it was the purpose of the Legislature to strike a blow at the modern methods, less harsh than threats, intimidation or promises of benefits to be conferred, condemned by the common law, that are employed by detectives and arresting officers to obtain information and confessions from those suspected of guilt or implicated in crime.

Just as three centuries ago the use of the rack and other tortures for compelling confessions of guilt were abolished in England, there is now a tendency to do away with the ''sweat-box'' and other like methods that are calculated to make such confessions, other than spontaneous.

In Ammons v. State, 80 Miss., 592, 18 L. R. A., 768, the Supreme Court of Mississippi had before it the question that we are now considering, in which it was held that proof of a confession obtained as was the one in this case, was incompetent.

In the closing paragraph of the opinion it is said:

''Such proceedings as this record discloses cannot be too strongly denounced.   They violate every principle of law, reason, humanity, and personal right.   They restore the barbarity of ancient and medieval methods.   They obstruct, instead of advance, the proper ascertainment

of truth. It is far from the duty of an officer to extort confession by punishment. On the contrary he should warn his prisoner that every statement he may choose to make may be used against him on his trial."

In the foot notes to this case may be found an interesting discussion of this question and a citation of numerous authorities, which condemn the methods employed to obtain the confession attempted to be proved in the instant case.

Proof of a confession is never admissible unless it is voluntarily made, and, by the word "voluntary," it is meant that the confession must be made of the free will and accord of the defendant without coercion, whether from fear of any threat of harm, promise or inducement by hope of reward or method known as sweating. The act, *supra,* is in no way violative of any provision of the Constitution of the State. It merely provides a rule of evidence and procedure by which the courts of the State are to be governed, and prescribes punishment for those who employ the methods therein condemned. It is neither unreasonable or oppressive in effect, but was designed to protect the individual citizen in a right guaranteed to him by section 11, Bill of Rights, Constitution, which declares: "He cannot be compelled to give evidence against himself."

It is manifest from Sheeran's testimony that he deliberately planned to entrap appellee into a confession of guilt, and the circumstances under which the confession was obtained show that it resulted from methods both artful and deceptive, that must have so agitated the mind of appellee and aroused his fear as to have a coercive effect; therefore the confession was not voluntary. The course of interrogation followed by Sheeran, the character of the questions propounded, the artful laying of the plan in the outset to contradict him, and the seductive suggestions throughout the interviews tending to convince appellee of the necessity of his making a confession and of the hopelessness of his denial of guilt, were sufficient to break down his power of resistance and leave him at the mercy of his inquisitor. The act, *supra,* was intended to prevent and destroy just such methods as were here employed, and to punish those who employ them. We do not mean to hold that a voluntary confession may not be made by one charged with crime and under arrest, for such confessions have often been admitted and will yet be admitted by the courts as compe-

tent, but it should come from the defendant under such circumstances as show it to be made of his free will and with full and perfect knowledge of its nature and consequences, free from the dictation or coercion of others.

So, in our opinion, the trial court did not err in rejecting proof of the confession attempted to be made through Sheeran. Wherefore the ruling is affirmed and this opinion certified to the court below as the law of the case.