# Williams v. Commonwealth.

(Decided March 13, 1925.)

## Appeal from Bell Circuit Court.

1. Criminal Law—Whether Liquor was Sold Within Year Prior to Finding of Indictment Held for Jury.—Whether liquor was sold within year prior to finding of indictment held for jury.

2. Intoxicating Liquors—Whether Medicinal Preparation was Sold for Beverage Purposes Held for Jury.—Whether medicinal preparation, containing more than ½ of 1 per cent. by volume of alcohol, was sold for beverage purposes, held for jury.

3. Intoxicating Liquors—Evidence that Purchaser was Generally Known as Constant Drinker of Intoxicating Liquor Held Competent.—In prosecution for sale of liquor, involving issue as to whether it was sold for beverage or medicinal purposes, testimony that purchaser was generally known to be a constant drinker to excess of intoxicating liquor held competent.

4. Criminal Law—Statement by Court to Juror Held Misconduct Constituting Ground for Reversal, on Appeal from Conviction for Similar Offense by Jurors who Heard Statement.—Statement of court to juror who held out for acquittal, "You get off this jury and get out of this courthouse. If I could send you to jail I would, and you are discharged without pay," held misconduct constituting ground for reversal, under Criminal Code of Practice, section 271, subsection 7, on appeal by defendant from conviction on subsequent trial for similar offense by jurors, who as members of panel heard statement; prejudice to defendant being presumed therefrom.

5. Criminal Law—Statute, Precluding Review of Error in Impaneling of Jury, Held Inapplicable to Misconduct of Court in Making Statement to Juror, on Conviction for Similar Offense.—Criminal Code of Practice, section 281, precluding review on appeal of alleged error in the impaneling of jury, held inapplicable to misconduct of court in reprimanding juror who held out for acquittal, on appeal from conviction for similar offense by jurors who heard statement.

6. Criminal Law—Statute, Providing for New Trial, where Misconduct Prevents Fair and Impartial Trial, is Applicable to Misconduct of Presiding Judge Before as well as During Trial.—Criminal Code of Practice, section 271, subsection 7, providing for new trial, where defendant has not received a fair and impartial trial, applies where misconduct preventing fair and impartial trial arises out of an act of judge presiding at the trial, whether it occurred before or during the trial.

JAMES M. GILBERT for appellant.

FRANK E. DAUGHERTY, Attorney General, and MOORMAN DITTO, Assistant Attorney General, for appellee.

Opinion of the Court by Chief Justice Settle—
Reversing.

The appellant, George Williams, was indicted in the
court below for the offense of unlawfully and knowingly
selling to Amanda Jane Partou, for beverage purposes,
"A liquid mixture and medicinal preparation known
. . . as 'Batesman's drops,' which contained more
than one-half of one per cent by volume of alcohol, same
being an intoxicant." His trial by jury under the indict-
ment, resulted in a verdict finding him guilty and fixing
his punishment at a fine of $150.00 and imprisonment of
45 days in jail. He has appealed from the judgment ap-
proving that verdict.

Two of the numerous grounds that were relied on
by the appellant for the new trial refused him by the
circuit court, are strongly urged by his counsel for the
reversal of the judgment, viz., error alleged to have been
committed by the trial court to the prejudice of his sub-
stantial rights: First, in overruling his motion, made at
the conclusion of the evidence, for an instruction per-
emptorily directing the jury to return a verdict of "not
guilty." Second, misconduct of the presiding judge of
the court toward the two panels of the jury and the ap-
pellant, before the beginning of the latter's trial, amount-
ing to a breach of official duty and abuse of judicial
power.

The first of these contentions is rested upon the
grounds: First, that the evidence failed to show a sale
of the "Bateman's drops" by the appellant within a year
before the finding of the indictment; second, that it also
failed to show that it was knowingly sold by the appel-
lant for beverage purposes. We are unable to find that
the record supports the contention upon either of the
grounds urged. It is apparent from the evidence of
Amanda Partou, purchaser of the Bateman's drops, that
she was a reluctant witness. But, while she failed to fix
the day, month, or year of the purchase, she did state that
it was made about a year and a half before the appellant's
trial resulting in the judgment of conviction appealed
from; which statement she subsequently amended before
concluding her testimony, by the further more definite
one, that the purchase was made not beyond two years
preceding the trial.

As it is shown by the record that the appellant's
trial occurred during the November term, 1924, of the

Bell circuit court and on the 5th day of that month, and that the indictment charging him with the offense was returned by the grand jury on August 13, 1923, of a special term of that court, which began in July, 1923, it is obvious that the admitted purchase of the Bateman's drops of the appellant by the witness, if made either a year and a half or two years before the trial of the appellant, as then testified by the witness, it was made within the twelve months next before the finding of the indictment. So it may well be said that there was no contrariety of evidence as to the fact that the offense for which the appellant was tried, if committed at all, was committed within a year before the finding of the indictment.

The insistence of appellant's counsel that there was an absence of any evidence tending to prove that he knew at the time of its sale to the witness, Amanda J. Partou, that the liquid in question was purchased by her for use as a beverage, we also regard untenable. It is true that such knowledge on the part of appellant was not shown by direct testimony from any witness, and also true that the witness, Amanda J. Partou, testified that at the time of purchasing the Bateman's drops, which consisted of two bottles, she told the appellant she wanted it for "medical purposes." It was, however, admitted by her that she bought the liquid "to drink," and that at the time of its purchase she made no claim of being afflicted with any illness or disease that required its use, or that her use thereof had been advised by a physician. She also admitted it had been her habit, continuing through several years and down to the time of her purchase of the Bateman's drops on the occasion in question, to drink that liquid; and that during that entire time her average consumption of it had amounted to a bottle per week, the whole of which she purchased of the appellant. This witness further testified that she had been intimately acquainted with the appellant and his wife 18 or 20 years, made frequent visits to their home and his store, and had recently lived with and worked for them about one year.

The foregoing testimony of Amanda J. Partou relating to her long acquaintanceship with the appellant and his family, her frequent visits to his store and previous residence with and service to his family, was corroborated by that of Charles Stewart, also a witness for the Commonwealth, who, in addition, testified that Amanda J.

Partou was by repuattion, and in fact, generally known to be a constant drinker to excess of intoxicating liquors. Stewart also testified that he knew each bottle of the liquid known as "Bateman's drops" contains alcohol, the quantity being 48 per cent of the whole. It is not complained that the testimony of the witness, Amanda J. Partou, was incompetent, but contended that it failed to prove the unlawfulness of the sale made of the Bateman's drops by the appellant. But it is complained that the testimony of Stewart was incompetent.

We think the testimony of the witness Stewart was competent, 1st, because of its conducing to prove the intoxicating character of the liquid, known as "Bateman's drops," that was sold the witness, Amanda J. Partou, by the appellant; 2nd, because of its bearing on the question as to whether its sale was made by the latter with the knowledge, or the opportunities for knowing, that it was for use as a beverage.

The appellant's complaint of misconduct on the part of the trial court, urged in his second and final ground for the reversal of the judgment, presents a more serious question than any we have considered. It appears from the bill of exceptions that the appellant, George Williams, was charged by another indictment in the court below with the offense of unlawfully selling Bateman's drops to a person other than Amanda J. Partou, under which he was tried before the calling of the instant case for trial. In the former case the jury failed to agree upon a verdict, eleven of them favoring a verdict that would have declared the defendant guilty of the offense charged, the twelfth member of the jury favoring a verdict of acquittal. When the jury came into court and one of their number reported their inability to agree upon a verdict, the judge of the court said to them: "All of you men that agreed in this case hold up your hands." In response to this command the eleven jurors who had agreed held up their hands. Thereupon the judge relieved the jury from further consideration of the case, in doing which he commanded the attention of the one member thereof who, by reason of his failure to agree with the eleven on a verdict favored by them had not held up his hand, and to him said: "You get off of this jury and get out of this courthouse. If I could send you to jail I would do it; and you are discharged without pay."

It is fairly apparent from the record, and not denied by counsel for the Commonwealth, that the

juror thus summarily discharged from service by the presiding judge for the remainder of the term then in progress, had served as a member of the petit jury from its beginning; and that such discharge was ordered, and the harsh language then employed by the judge in declaring it, uttered in the immediate presence and hearing of the eleven jurors with whom he had failed to agree, and, also, in the presence and hearing of all other persons then in attendance as petit jurors for the term. Consequently, everything that was done and said by the presiding judge in ordering and effecting the dismissal of the disagreeing juror, was seen and heard by all of the remaining members of the two petit jury panels, and the conduct and language of the judge referred to could have had no other meaning to them than that a juror in a criminal or penal prosecution who, however conscientious his motive and conduct in so doing, alone, or even in conjunction with a minority of the jury, caused a mistrial by refusing to agree to a verdict desired by the majority thereof, would be recreant to his oath and duty as a juror, and, also, assume the risk of being subjected to a public denunciation from the court and dismissal from further service as a juror for the remainder of the term, without compensation for service he had previously rendered in that capacity during the term.

It cannot be doubted that the conduct and language of the trial judge in question were reasonably calculated to have a coercive and intimidating effect upon the two panels of petit jurors, and in influencing verdicts in like cases subsequently returned by them during the same term of court. The presumption may well be indulged that such was the effect of the trial judge's conduct and language, referred to, upon the jury by which the appellant was tried and convicted in the case at bar, and upon the verdict returned by that jury; and this presumption is strengthened by the established fact, that the offense of which the appellant was convicted in this case is of the precise character of that for which he was tried in the former case; by the further established fact that the trial of this case began on the same day and shortly after the jury in the former case was dismissed; and by the admitted additional fact that nine of the eleven jurors who had agreed on the guilt of the appellant in the former case sat upon and were members of the jury that tried him in the instant case.

Manifestly, the conduct and language of the trial judge complained of by the appellant constituted reversible error, because it was such an abuse of judicial power and discretion as amounted to official misconduct, which, presumably, so prejudiced the appellant in his substantial rights as to prevent him from receiving a fair and impartial trial.

Notwithstanding the fact that the appellant was not then on trial for the offense charged in the instant case, this misconduct of the trial judge, as shown by the bill of exceptions, caused the appellant, in anticipation of its prejudicial effect upon his rights on the trial of the instant case that immediately ensued, by counsel to object and formally except of record to all that was said and done by that judicial officer constituting such misconduct; and in addition this misconduct of the judge was one of the grounds filed by the appellant in support of his motion for a new trial. It is obvious that the error thus committed by the trial judge was not one that arose out of the impanelling of the jury in the instant case. Hence we are not precluded by any provision of section 281, Criminal Code, from reviewing and correcting it. As the misconduct of the judge as much affected the proceedings and result of the trial in this case as if committed therein, it would be but a matter of speculation to say that it was not prejudicial to the substantial rights of the appellant.

In the recent case of Shaw v. Comlth., 206 Ky. 781, we found it necessary to reverse a judgment of conviction on account of a similar, though less hurtful, error than the one under consideration. In that case the judge of the circuit court at the beginning of the term and following the selection of the full panels of petit jurors for the term, in advising them with respect to the enforcement of the anti-liquor laws, told them it was their duty in trying violators of such laws "to disregard the evidence of the accused as unworthy of belief."

This statement was declared so grossly improper as to compel the reversal of the judgment, and in the instant case a like conclusion is inevitable. Criminal Code, section 271, subsection 7, provides that a new trial should be granted, "If from the misconduct of the jury, or any other cause, the court be of opinion the defendant has not received a fair and impartial trial." Obviously, this provision should be applied where the misconduct

preventing a fair and impartial trial arises out of an act of the judge presiding on the trial, whether it occurred before or during the trial.

For the reasons indicated the judgment is reversed and cause remanded for a new trial, and for such proceedings as may not be inconsistent with the opinion. The whole court sitting.