## Couch v. Commonwealth.

(Decided December 21, 1928.)

J. K. POLK TURNER for appellant.

J. W. CAMMACK, Attorney General, and JAMES M. GILBERT, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—
Affirming.

Henry Couch, Floyd Napier, and Corbitt Barger were charged by indictment with the murder of Isaiah Herd. They asked for separate trials. The commonwealth elected to try Henry Couch, and upon his trial he was found guilty of manslaughter, and his punishment fixed at confinement in the penitentiary for 21 years. His motion for a new trial was overruled, he excepted, and has appealed.

As his first ground for a new trial consisted of a charge that the verdict is flagrantly against the evidence, it becomes necessary for us to state briefly the facts.

On Thursday, August 4, 1927, Isaiah Herd and others started out in search of whisky. It appears that Herd contemplated doing some work in the election to take place the following Saturday, and possibly desired this liquor to put himself into proper condition for the strain of the day. Henry Couch and his associates also started out on that day for the same purpose. It seems that they expected to find this liquor on Squabble creek in Perry county. Herd and his party went up a stream referred to as "Whoop-Falaria," and somewhere up that stream they did succeed in getting a small quantity of whisky, two or three pints, it seems; but Herd was in search of a larger quantity, a gallon or two, if he could find it. Accordingly, he went further, and visited Otter creek, and the sources of supply on that stream, and had started down Buffalo creek when Herd's party met Couch's party going up Buffalo. It appears that the members of both parties were fairly well intoxicated. When these two parties met, Herd, addressing Couch's party, said, "How are you, gentlemen?" and some one in the Couch party answering said: "You G—— d—— black s—— of a b—— have you got your nerve?" Herd answered: "I have, but you would not want to shoot me would you, and me your friend and one of your people."

Immediately two shots were fired, and then following that four shots were fired, and at the conclusion of the shooting Herd fell off his mule, dead, and Corbitt Barger fell with four or five wounds in him, from which he recovered.

According to the evidence for the commonwealth, Couch and his party had dismounted before this meeting took place, and this shooting occurred while Herd and his party were still mounted. It is admitted that Henry Couch fired the shots by which Isaiah Herd was killed. One of these shots entered Herd's body just about the left hip, and came out at the tenth rib on the right-hand side. The second shot entered Herd's body farther toward the backbone, about the tenth rib, and lodged about the right collar bone in front, thus indicating that Couch, when he did this shooting, was below and behind Herd, and was shooting up, for the range of both these bullets was up. It was admitted that Herd did the shooting by which the wounds on Corbitt Barger were inflicted. One of these shots entered Corbitt Barger's left side and came out at his breast. A second shot entered his body in front of his shoulder and it came out somewhere down his back. A third shot struck him on the thigh, came out, and struck him again in the calf of the leg. A fourth shot went through the calf of his leg and then struck him in the big toe, thus indicating that at the time he did this shooting Herd was above Barger. So these wounds support the witnesses for the commonwealth who testified that Couch and party had dismounted, that one of them had drawn a pistol before Herd and his party rode up, and that the shooting occurred while Herd was still on his mule. The evidence for Couch is that, at the time of the shooting, he was mounted, and Herd dismounted, and that he shot in his necessary self-defense, after Herd had begun the difficulty by first shooting Corbitt Barger, and then shooting at Couch. Couch is supported by his companions, Floyd Napier and Corbitt Barger, and by Herd's companions, Stanford Barger and Jasper Barger. Thus it appears that all the surviving members of this battle are now on Couch's side. According to the testimony of these witnesses, Couch fired in his necessary self defense. The evidence for the commonwealth came from Granville Davidson and Blev Hacker, two ginseng diggers, who were engaged in hunt-

ing ginseng, and who testified that they were at the time of this battle just a short distance away on the mountain side, and saw and heard it all, but, because they thought all the parties were drunk, decided that it would be wiser for them to not then let their presence be known, and they did not.

The basis of Couch's argument that this verdict is flagrantly against the evidence is that Davidson and Hacker tell such a peculiar story that it is unbelievable; but we can see nothing peculiar about it. Of course, it is strongly at variance with the story told by Couch and his companions, but these two men were submitted to a most gruelling and skillfully conducted cross-examination that failed to result in any damage to the force and effect of their evidence. Besides, the wounds on the men who were shot support their account of this battle, and the evidence given by these wounds is immutable. Those wounds cannot lie; but men can, and sometimes do. Moreover, these two witnesses, Davidson and Hacker, were supported by Millard Spurlock, who was, with some other men, at the conflux of Whoop-Falaria and Buffalo, just a short distance from this shooting, and heard it. Spurlock said: "The first two shots had a dead sound, like a .38." That was the sort of pistol that Couch was shooting, while the four or five shots that followed were fired rapidly and cracked keen, like an automatic, which was the kind of pistol that Herd was shooting. It was shown by the witness Minnie Gay that Corbitt Barger said to Henry Couch, in her presence, that Couch shot seven times, and that Couch said to Barger, "Don't talk too damn much." She also testified that Couch said he did not know who did the killing. It was shown that Henry Couch that day stopped at the store of Irvin Hensley, and bought from him some ".38 special" cartridges, and a ".38 special" ball was taken from the body of Herd. It was shown by the witness Eli Burns that, two or three weeks before this, he had met Couch when Couch was drunk, and he asked Burns if he had seen Herd that morning. Burns told him he had not, and Couch said that he wanted to get up with the s—— of a b——; said he was going to kill him, rob him and spit in his face. So we conclude that this verdict is not flagrantly against the evidence; but, on the contrary, is abundantly supported by the evidence. In the case of Wright v. Com., 221 Ky. 226, 298 S. W. 673, we said:

"The verdict of a jury should not be disturbed by this court on the ground that it is flagrantly against the evidence, unless it appears so against the truth as shown by the proof as to shock the conscience of the court."

Our conscience is not shocked. The credibility of these witnesses was a matter for the jury, and we have often written that we will not reverse a case because the jury believed one set of witnesses rather than another. Blanks v. Com., 223 Ky. 484, 3 S. W. (2d) 1105.

Couch says now that he was surprised by the evidence of Davidson and Hacker; but there is nothing in that contention, because on the day before the trial counsel for Couch talked with Davidson and Hacker, and learned what their evidence would be. Moreover, in the case of Rowlett v. Com., 222 Ky. 695, 2 S. W. (2d) 378, we held that it is the duty of a defendant, in such circumstances, to make a motion for a continuance. He cannot go ahead with the trial, and then complain of it after he has lost. Ordinarily, a defendant must give the trial court a chance to correct an error, if he thinks one has been made, before this court will consider it. Evidence was admitted for the purpose of impeaching the credibility of some of the witnesses for Couch, and he says the court erred in failing to admonish the jury of the purpose for which this evidence was admitted; but he entered no objection and made no motion that the jury be so admonished, thereby giving to the trial court no opportunity to correct the matter. Therefore that question is not properly presented to us. See Sanders v. Com., 221 Ky. 268, 298 S. W. 688.

Certain other testimony was introduced for the purpose of contradicting other witnesses of Couch, and the court said: "Gentlemen, that testimony is permitted to go to you for the purpose of contradicting the witness, Jasper Barger, and affecting his credibility. You are to determine whether or not it does." He is arguing here that the court should have said, "For the purpose of affecting his credibility, if it does so do, and you are to determine whether or not it does." But he did not except to the ruling of the court. He did not ask the court to modify that admonition, or give the court any opportunity to correct the error, if it was an error. Therefore, it is not necessary for us to determine whether or not it was an error, for he has waived it.

He complains here of the instructions given, but he has not discussed that matter in his brief, so that will be treated as waived.

The judgment is affirmed.