# Keller et al. v. Commonwealth.

(Decided October 8, 1929.)

816

C. A. WHISTLER and J. C. CLOYD for appellants.

J. W. CAMMACK, Attorney General, and JAS. M. GILBERT, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY COMMISSIONER STANLEY— Affirming.

The appellants, John Keller and James Grigsby, colored, have been condemned to die for the murder of Harry S. Long, an elderly watchman at the Community Laundry, in Louisville. Their guilt is clearly established out of their own mouths, and that of their confederate in the crime, Richard Edmonds, who also has been given the extreme penalty on a separate trial and whose case has been affirmed within the past few days. See Edmonds v. Commonwealth, 230 Ky. 725, 20 S. W. (2d) —.

There are no extenuating or mitigating circumstances. The murder is of a cruel and atrocious nature, accompanied by an Iscariotic betrayal by Edmonds, who was a fireman at the laundry and an apparent friend of the deceased. The motive was robbery.

Early in the evening of November 14, 1928, Edmonds met Grigsby at a negro "Club" in an alley, and later the two met up with Keller at another bootlegging establishment where more whisky was obtained. According to Edmonds, who testified for the commonwealth on this trial, Grigsby asked him if there was any money at the laundry and he told him not as he knew of. They went to find Keller, and then the three proceeded to the laundry for the purpose of robbing the safe. When they arrived he knocked two or three times on windows and then on the door. Upon inquiry he told the watchman who he was. Long opened the door and he and appellant went in. Grigsby immediately grabbed Long and held him while Keller struck him twice with a bar of iron or furnace grate shaker and sent Edmonds to find a hatchet. Long cried out: "Oh, Rich, don't let them do me this way." Keller took the hatchet and Edmonds started to leave but was called back, and the three of them went into the office where he told them the money was, and

Keller used the hatchet to prize open a drawer in the safe and extracted the money, which was divided among the three.

Bourbon Unsel, colored, and members of his family, who lived next to the laundry, testified to seeing the three men at the laundry. Edmonds, whom they knew, took down a shutter and put his head in the window and then beckoned the two men standing at the corner of the building to go in the door with him when it was opened. They heard Long crying out, "Don't kill me Rich; please don't kill me; Lord have mercy; please don't kill me, Rich; don't do that Rich." They saw Keller and Grigsby come out of the building. One of the witnesses, a boy, who was coming home through an alley from a picture show, says he heard Edmonds call out from inside of the building, "Come back in here; what is the matter with you, scared?" and the two men went back. Unsel says Keller started down the alley and Grigsby, who stood in the door a moment, called him back. A few minutes later he heard a tinkering noise in the laundry and saw no more of the three men. Unsel called the police and they arrived at the laundry shortly before 11 o'clock where they found Mr. Long unconscious; with blood around the boiler room. The safe and desk had been prized open and ransacked. Long died a short while later.

Within an hour the officers arrested the three men not far from the scene of the crime, took them first to the station house and then to the detective office, where each of them signed a confession. Grigsby's statement was, in substance, that after they met up with each other Edmonds remarked that he had lost his rent money and had to get some some way; and they went to the laundry; Edmonds knocked on the window and the white man let him in the door; he stayed about 5 minutes and then called Keller and himself to come in; when he got inside he found Keller and Richard scuffling with the white man; Richard cursed him and told him to shut up and hit him in the head; and that Edmonds prized open the box in the safe, robbed it, and that they all went out the front door. The substance of Keller's statement was that Edmonds invited him and Grigsby to go to the laundry; that he went in and called the appellants, and later Richard told them after they had left the building "I got that boy." It appears that after making the signed statement Keller indicated that he wanted to tell more about the crime and made a more elaborate statement which

,was not reduced to writing. In this he told that Grigsby grabbed Long and Edmonds struck him, and that those two robbed the safe. He also told the officers where they could find the hatchet which had been thrown into the sewer. At his request Edmonds told them they could find Long's pistol in his yard. The officers found the pistol and hatchet that night at the places indicated.

The defendants on the trial repudiated these confessions and testified that they had been obtained from them by "sweating;" that they had been grilled, beaten on the head with a blackjack, struck in the mouth and otherwise brutally treated; that they signed the confessions at a time when they were almost senseless and did not know what they were doing, and because they were scared not to do so and in order to secure relief. The officers in rebuttal denied this treatment, and testified that the statements were voluntarily made.

The defendants' testimony throughout is substantially the same. They both testified that they had gone with Edmonds to the laundry to secure a truck to take a ride to a colored roadhouse; that they had done so on previous occasions; that when they reached the laundry Edmonds told them to wait and he would call Raymond and get the truck. Edmonds took down the shutter from the window and says, "This is Rich;" then went around and entered by a side door. They remained outside smoking, as testified by the Unsel family. After Edmonds had been inside 10 or 15 minutes the appellants went to the door and there they saw him strike Mr. Long with some kind of an instrument, and Long was pleading with him not to kill him. They started out whereupon Edmonds called them back. He had a pistol and a hatchet in his hands when they went back into the laundry. They rushed right out through the building to St. Catherine street, and a little while afterwards met Edmonds on Jackson street. He asked why they ran since they had nothing to do with it, and there threw the hatchet in the sewer. Other witnesses introduced by the defendants testified that they had been out a time or two with Edmonds at night in the laundry truck. They also undertook to establish the appellants' reputation as being good.

1. The first ground urged for a reversal of the judgment is that the court should have sustained defendants' challenges for cause of several of the jury panel, and because he refused to discharge those already accepted

by both parties after one of them stated of his own accord: "This matter brings up another question; if these men or either of them were present when the act was committed and either one was running away at the time I would still hold him guilty, notwithstanding he ran away; I think that is the question that is up for consideration. This brings up the question. I feel he would be just as guilty although the other man committed the crime, yet he was present when it was being planned." And, further: "If he was running away at the time it occurred I would still hold he was a party to it." This statement was induced by a response of another member of the panel being interrogated.

Counsel necessarily concede that under the specific provisions of section 281 of the Criminal Code this court is without power to consider decisions of the trial court upon challenges for cause. But they say that, inasmuch as the court does have power to reverse a decision of the circuit court in overruling a motion for a new trial, it should reverse this judgment because the trial court should have sustained appellants' motion for a new trial on this ground. That would be doing indirectly what the Code prohibits being done directly. The entire right of appeal is a matter of grace on the part of the legislative department, and it has specifically withheld jurisdiction from the appellate court to review decisions of the trial court respecting the formation of a jury in a criminal case. A decision overruling a motion for a new trial on the ground is yet a decision upon the challenge for cause. In amending section 281 of the Criminal Code by the Acts of 1910, c. 92, which gave this court power to review the action of the circuit court in overruling a motion for a new trial, its power with respect to decisions of this character was not increased. Since that amendment there have been a legion of cases to this effect. Among them are McLaughlin v. Commonwealth, 192 Ky. 206, 232 S. W. 628; Hall v. Commonwealth, 196 Ky. 167, 244 S. W. 425, and Stump v. Commonwealth, 200 Ky. 133, 253 S. W. 242. It may be observed that all of those challenged for cause were excused peremptorily by the defendants, and that their counsel used only 12 of the 15 challenges allowed them by law. Certainly the action of the court could under no circumstances have been prejudicial, except perhaps as to the accepted juror.

2.   Exception was also taken to a certain hypothetical question asked by counsel for the commonwealth of a prospective juror. Appellants' counsel say this was misconduct of such a degree as authorizes the court to set aside the judgment under the authority of Williams v. Commonwealth, 207 Ky. 807, 270 S. W. 61, and several other cases of that character. If it be conceded that the question was improper, it certainly cannot be said to be prejudicial, for the juror was excused and did not serve.

3.   It is claimed in behalf of appellants that the court erred in admitting incompetent evidence.  The president of the Community Laundry testified, over appellants' objection, that late in the afternoon of the day of the murder Edmonds came to the office and drew $5 on his wages, and that there was a roll of money displayed in his presence.  They also objected to testimony proving that the safe and desk had been broken into and ransacked that night.

It has been uniformly held throughout the history of our jurisprudence that proof of extraneous crimes in no way related to the offense for which the accused is on trial is inadmissible as original evidence of guilt.  But to this general rule, wise and just as it is, there are several important and distinct exceptions recognized from absolute necessity, either because the collateral crime is intermingled with the principal offense or as an aid in the detection and punishment of crime.  The evidence about which complaint is here made comes within two of those exceptions.  The evidence as to the collateral crime of robbery was competent as part of the res gestae of the crime of murder for which the accused were being tried. It was relevant and competent also as showing motive for the commission of the crime.  O'Brien v. Commonwealth, 115 Ky. 608, 74 S. W. 666; Denham v. Commonwealth, 119 Ky. 514, 84 S. W. 538; Carsner v. Commonwealth, 196 Ky. 562, 245 S. W. 155; Roberson's Criminal Law, sec. 1800.  The charge of murder for which the two of them were on trial grew out of the subsidiary crime and it was accordingly proper to show that it was committed.  Likewise was the evidence of Edmonds having received knowledge of money in the safe competent as tending to prove that the intention of the three men in going to the laundry was to secure that money and in the consummation of that purpose they were moved to kill the watchman.

It is said that, since it was not charged in the indictment that the murder was committed pursuant to a con-

spiracy, evidence of the money having been displayed in Edmonds' presence was not competent on this trial. Besides the direct testimony of an agreement the proven concerted action of the three men just before and at the time of the commission of the robbery and murder, of course, manifests a conspiracy and collaboration among them. In Crenshaw v. Commonwealth, 227 Ky. 246, 12 S. W. (2d) 336, a review was made of the rule of practice in the admission of evidence relating to detached acts of participants in a crime showing the existence of malice, where no conspiracy was charged in the indictment. In no event could the admission of this evidence have been prejudicial.

4. It is insisted also that, if this evidence be competent, the court committed prejudicial error in not admonishing the jury as to its purpose. It does not appear in the record that this omission was called to the attention of the court, and under many opinions of this court the defendants will be deemed to have waived such admonition. Stacey v. Commonwealth, 189 Ky. 411, 225 S. W. 37, 25 A. L. R. 490; Rowlett v. Commonwealth, 222 Ky. 700, 2 S. W. (2d) 378; Ochsner v. Commonwealth, 128 Ky. 761, 109 S. W. 326, 33 Ky. Law Rep. 119; Couch v. Commonwealth, 227 Ky. 194, 12 S. W. (2d) 285; Wood v. Commonwealth, 229 Ky. 459, 17 S. W. (2d) 443. That rule is thus stated in 16 C. J. 1058: "A failure to give a particular instruction on the rules regulating the admission and the exclusion of evidence, and on its character, weight, effect, corroboration, or impeachment, is not error where such an instruction is not specially requested. Thus it has been held that, in the absence of a proper request therefor, it is not error to fail to give an instruction limiting the purpose for which particular evidence may be considered."

5. Appellants say that the confessions obtained from them were in violation of the Anti-Sweating Statute (Ky. Stats., sec. 1649b1 et seq.), in that they were extorted by plying with questions, duress, and brutal treatment. It is pointed out that in the first case construing this act (Commonwealth v. McClanahan, 153 Ky. 412, 155 S. W. 1131, Ann. Cas. 1915C, 132) the court approved the procedure shown to have been followed there, which was that the trial court heard the evidence respecting the manner in which the confession was obtained without the hearing of the jury, and that the judge passed upon its competency. In this case the court followed the prece-

dent established in Bennett v. Commonwealth, 226 Ky. 530, 11 S. W. (2d) 437, and the cases therein cited, in having submitted to the jury the question of the competency of this evidence.

6. Other points made in behalf of appellants are that they were entitled to a self-defense instruction, which was not given; that the court erred in finally submitting the case to the jury about midnight when they were fatigued; that it was prejudicial error to bring before this jury another defendant for the purpose of sentencing him to death for murder; and, finally, that the commonwealth's attorney was guilty of improper argument.

It is apparent from this record and the evidence as elaborately given in this opinion that there was no basis whatever for a self-defense instruction. Gambrell v. Commonwealth, 130 Ky. 513, 113 S. W. 476; Frasure v. Commonwealth, 169 Ky. 620, 185 S. W. 146; Roberson's Criminal Law, sec. 1872.

It is rested in the discretion of the trial court whether the case should be submitted to the jury at the time it was or that they be held over night and submitted the next morning. It is the usual practice to secure an expression of the wish of the jury under such circumstances, and it is likely that was done here. But whether it was or not it does not appear that there was any abuse of discretion in the action of the court.

The record shows that another defendant was brought into the courtroom for the purpose of receiving a death sentence, but upon objection by appellants' coun sel the jury was taken out of the room, and it does not appear that the jury had any knowledge of the purpose for which that man was brought into the courtroom.

We do not consider the quoted portion of the argument of the commonwealth's attorney improper under the facts of the case. Certainly it was not prejudicial.

A helpless, innocent man has been brutally clubbed to death while pleading for mercy. The guilt of these men is sure, and, severe as the penalty is, it is the judgment which countless years have decreed under such circumstances. They have had a fair trial and their rights have been conserved throughout.

The judgment must be and is affirmed.

The whole court sitting.