**Christopher DIXON, Appellant**

v.

**COMMONWEALTH of Kentucky, Appellee**

**NO. 2016–CA–000036–MR**

Court of Appeals of Kentucky.

**FEBRUARY 17, 2017**

BRIEF FOR APPELLANT: Linda Roberts Horsman, Frankfort, Kentucky

BRIEF FOR APPELLEE: Andy Beshear, Attorney General of Kentucky, Emily Bedelle Lucas, Assistant Attorney General, Frankfort, Kentucky

BEFORE: KRAMER, CHIEF JUDGE; D. LAMBERT AND NICKELL, JUDGES.

## OPINION

KRAMER, CHIEF JUDGE:

Christopher Dixon appeals from the Bell Circuit Court's order of judgment and sentence pursuant to jury verdict, entered November 30, 2015. We affirm the circuit court.

On November 4, 2014, in Bell County, Kentucky, Officer Barry Cowan of the Middlesboro Police Department was dispatched to a trailer park to investigate a report of individuals manufacturing methamphetamine. Officer Cowan parked his cruiser at a nearby church and moved toward the trailer park on foot. As he approached, he saw two men in proximity to a green pickup truck. One of the men, later identified as Jonce Adams, was in the bed of the pickup truck. The other man, later identified as Dixon, was standing adjacent to it. Upon seeing Officer Cowan, Adams jumped out of the back of the truck, and the two men began walking away from the officer, moving between two trailers. When Officer Cowan hailed the men and indicated he wished to speak with them, Adams kept walking. Officer Cowan then witnessed Adams take items from his pockets and throw them at the open door of one of the trailers as he walked by. Officer Cowan recovered the thrown items and identified them as packs of pseudoephedrine, which is used in the manufacture of methamphetamine.

In the meantime, Dixon had acceded to the officer's request and stopped walking. Dixon consented to a search of his person, at which point Officer Cowan discovered several more packages of pseudoephedrine and a coffee filter. In a subsequent search of the green pickup truck, Officer Cowan recovered a can of camping fuel, a duffel bag and a plastic shopping bag. The duffel bag contained a cold pack, drain opener, lithium batteries, coffee filters, a metal pipe, and a Powerade bottle containing an unidentified substance. The plastic bag contained tubing, wire cutters, scissors, a bowl, and pliers. Officer Cowan also found within the bag a prescription pill bottle, with Dixon's name on the label, holding a quantity of salt. Viewed together, the officer believed these items represented a nearly complete collection of chemicals and equipment necessary for the manufacture of methamphetamine.

Officer Cowan arrested Dixon and Adams for manufacturing methamphetamine,[1] and the two men were tried separately. Dixon's jury trial took place on November 10, 2015. Officer Cowan and Lieutenant Tom Busic testified about the incident for the Commonwealth and explained to the jury how each of the aforementioned items found at the scene were either ingredients or tools used in the manufacture of methamphetamine. The jury found Dixon guilty of the charge and fixed his sentence at fifteen years' imprisonment. The trial court entered final judgment and sentenced Dixon in accord with the jury's recommendation on November 30, 2015. This appeal follows.

Dixon presents three issues on appeal. For his first issue, he contends the trial court erroneously permitted the Commonwealth to inquire into a witness's number of felony convictions. Edward Simpson was the owner of the trailer where the arrests occurred and testified for the defense. He admitted being a convicted felon

---

1. Kentucky Revised Statutes (KRS) 218A.1432, the relevant portions of which read as follows: "A person is guilty of manufacturing methamphetamine when he knowingly and unlawfully... [w]ith intent to manufacture methamphetamine possesses two (2) or more chemicals or two (2) or more items of equipment for the manufacture of methamphetamine." First offense manufacturing methamphetamine is a Class B felony.

on direct examination. On cross-examination, the Commonwealth asked, "Is it fair to say that my office has had the responsibility of prosecuting you at least three times?" Dixon immediately objected to the question, but was overruled by the trial court. Simpson answered the question, stating that he had been convicted twice. In the ensuing bench conference, Dixon requested an admonition to the jury to instruct them that Simpson was a convicted felon, and no more information needed to be considered. The trial court declined to admonish the jury, reasoning that an admonition would bring more attention to Simpson's statement.

KRE[2] 609 permits impeachment of a witness by asking if he is a convicted felon. "If his answer is 'Yes,' that is the end of it and the court shall thereupon admonish the jury that the admission by the witness of his prior conviction of a felony may be considered only as it affects his credibility as a witness, if it does so." *Commonwealth v. Richardson*, 674 S.W.2d 515, 517–18 (Ky. 1984). Thus, it was certainly error for the trial court to allow an inquiry into the number of Simpson's convictions. However, like all evidentiary errors, when more than the mere fact of felony conviction is elicited from a witness, the issue becomes subject to harmless error analysis. *Allen v. Commonwealth*, 395 S.W.3d 451, 467 (Ky. 2013).

> The test for harmlessness is whether the error substantially swayed the verdict. The inquiry is not simply whether there was enough [evidence] to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand.

*Id.* (Internal citations and quotation marks omitted). Similarly, a trial court's failure to give a warranted admonition constitutes error, but it may nonetheless be deemed harmless if there is no reasonable likelihood the jury was swayed by the error. *Commonwealth v. Tramble*, 409 S.W.3d 333, 339 (Ky. 2013).

The Kentucky Supreme Court has previously found that an improper inquiry into felony convictions may be deemed harmless, even when the witness is subjected to more invasive questioning than what took place here. In *Hodge v. Commonwealth*, 17 S.W.3d 824 (Ky. 2000), the trial court erroneously permitted the prosecutor to ask about the number *and nature* of the witness's prior felony convictions. *Id.* at 848. Nonetheless, our Supreme Court found the error in *Hodge* to be harmless, "because there is no reasonable possibility that, absent the error, the verdict would have been different." *Id.* The Supreme Court also found it significant that the elicited statements were not those of the defendant, but only of a witness; "thus, there was no danger that the improper evidence would be considered for any purpose other than to affect her credibility." *Id.* at 849 (Comparing *Hodge to Richardson*, 674 S.W.2d at 517–18, where the prosecutor's impeachment was directed at testimony from the criminal defendant). As in *Hodge*, the Commonwealth's improper questioning in this case was merely of a witness, and not the defendant. Based on these factors, we conclude that the trial court's errors on this issue were harmless. The Commonwealth presented significant evidence, in the form of testimony and physical exhibits, supporting the argument that Dixon possessed the chemicals, equipment, and intent necessary for manufacturing methamphetamine. The information elicited from the non-defendant witness was im-

**2.** Kentucky Rule of Evidence.

proper, and the trial court should have admonished the jury. Regardless, there is no reasonable possibility that these errors would have altered the verdict in light of the Commonwealth's evidence.

For Dixon's second issue, he contends the trial court erred in allowing the Commonwealth to use evidence it had not turned over to his defense until the day before trial. In a bench conference immediately prior to trial, Dixon argued to the court that this was a violation of his right to timely discovery materials. "[I]t is imperative that the Commonwealth provide full and timely discovery pursuant to RCr[3] 7.24 and 7.26. Failure to do so will result in severe sanctions." *Roberts v. Commonwealth*, 896 S.W.2d 4, 6–7 (Ky. 1995). Dixon explicitly stated to the court that the defense was not asking for a continuance, instead asking the court to disallow the Commonwealth's use of those items entirely. The Commonwealth then informed the court that it had provided the list of materials the day before as a professional courtesy, because the defense had never made a discovery request. The trial court denied the motion to exclude evidence.

Upon careful examination, we find no error on this issue. On February 25, 2015, following Dixon's arraignment, the trial court issued an order in the case which, *inter alia*, instructed the Commonwealth to "furnish... all discovery required by law." However, Dixon does not argue that the discovery in question was exculpatory, and our law indicates that non-exculpatory[4] discovery is a vehicle driven by the defense. RCr 7.24(1) requires the Commonwealth to provide discovery to the defense "upon written request." RCr 7.24(2) provides that, "[o]n motion of a defendant," the court may order the Commonwealth to allow the defense to copy documents in the Commonwealth's possession. RCr 7.24(3)(a) and (b) both begin by stating: "If the defendant requests disclosure...." Taken as a whole, the language of the rule clearly indicates that discovery procedures are triggered by the defendant. When "the present appellant made no request for any discovery permitted by the rules," there are no grounds for reversal on the purported discovery violation. *Davis v. Commonwealth*, 463 S.W.2d 133, 135 (Ky. 1970).

Furthermore, the historically-appropriate remedy when faced with surprise evidence is for the defense to ask for a continuance. *See Couch v. Commonwealth*, 227 Ky. 190, 12 S.W.2d 285, 286 (1928) and *Bryant v. Commonwealth*, 231 Ky. 152, 21 S.W.2d 231, 234 (1929). Here, Dixon explicitly disclaimed continuance as a remedy and asked only for exclusion of the evidence. Our Supreme Court has termed this "an extreme remedy" compared to a continuance. *Swan v. Commonwealth*, 384 S.W.3d 77, 89 (Ky. 2012). We agree with the trial court that exclusion was not justified under these circumstances.

For his final issue, Dixon contends he was denied due process during the Commonwealth's penalty phase closing ar-

---

3. Kentucky Rules of Criminal Procedure.

4. "In *Brady [v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)], the United States Supreme Court held that 'the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.' "

*Commonwealth v. Parrish*, 471 S.W.3d 694, 697 (Ky. 2015). "The duty to disclose exculpatory evidence is applicable regardless of whether or not there has been a request by the accused...." *Commonwealth v. Bussell*, 226 S.W.3d 96, 100 (Ky. 2007) (citing *United States v. Agurs*, 427 U.S. 97, 107, 96 S.Ct. 2392, 2397, 49 L.Ed.2d 342 (1976)).

gument when the prosecutor urged the jury to punish him harshly in order to symbolically "send a message." During closing arguments of the penalty phase, the Commonwealth stated to the jury:

> I'm just going to say this, and I'm talking only about this case. These verdicts say what you believe is fair for the crime that's been committed and the criminal history the defendant has. I hope you'll say by your verdict that manufacturing methamphetamine on November 4, 2014, facts only in this case, merits a serious sentence. This case. Manufacturing methamphetamine in Bell County—specifically Middlesboro, with people all around in a residential area. Say by your verdict that's a serious crime.

 Dixon concedes this issue was not preserved, yet unfortunately does not request palpable error review[5] in his brief. "Absent extreme circumstances amounting to a substantial miscarriage of justice, an appellate court will not engage in palpable error review pursuant to RCr 10.26 unless such a request is made and briefed by the appellant." *Shepherd v. Commonwealth*, 251 S.W.3d 309, 316 (Ky. 2008). Dixon's brief does not mention RCr 10.26, nor does it ask for palpable error review, nor does it specifically argue that Dixon suffered "manifest injustice," as required for a finding of palpable error. "Therefore, we abstain from any substantive analysis of [the appellant's] argument." *Webster v. Commonwealth*, 438 S.W.3d 321, 327 (Ky. 2014).[6]

For the foregoing reasons, we affirm the Bell Circuit Court.

ALL CONCUR.

---

5. "Under Criminal Rule 10.26, an unpreserved error may only be corrected on appeal if the error is both palpable and affects the substantial rights of a party to such a degree that it can be determined manifest injustice resulted from the error. For error to be palpable, it must be easily perceptible, plain, obvious and readily noticeable. The rule's requirement of manifest injustice requires showing a probability of a different result or error so fundamental as to threaten a defendant's entitlement to due process of law." *Young v. Commonwealth*, 426 S.W.3d 577, 584 (Ky. 2014) (citations and internal quotation marks omitted).

6. Our abstention should not, however, be construed as condoning the remarks.