RENDERED:  DECEMBER 18, 2020; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1157-MR

BRENT D. BOSTICK												APPELLANT


APPEAL FROM LEWIS CIRCUIT COURT
v.				HONORABLE ROBERT B. CONLEY, JUDGE
ACTION NO. 16-CR-00037


COMMONWEALTH OF KENTUCKY									APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  JONES, LAMBERT, AND K. THOMPSON, JUDGES.

JONES, JUDGE:  Brent D. Bostick appeals from the Lewis Circuit Court's judgment and sentence of fifteen years' imprisonment, following his conviction at jury trial on charges of second-degree manslaughter,[1] second-degree assault,[2] aggravated first-degree driving under the influence of alcohol (DUI),[3] and owning

---

[1]  Kentucky Revised Statutes (KRS) 507.040, a Class C felony.

[2]  KRS 508.020, a Class C felony.

[3]  KRS 189A.010, an unclassified misdemeanor.

or operating a motor vehicle without insurance.[4] We affirm the trial court's judgment and sentence.

## BACKGROUND

On the evening of September 18, 2016, Randy Tucker was sitting in his home in South Portsmouth, Kentucky, watching a football game on television when he received a telephone call from the appellant, Brent Bostick, who wanted to come and visit. Bostick had been at the Fish Bowl, a local bar, and he arrived at Tucker's home with a beer in his hand. After drinking that beer and having another while at Tucker's residence, Bostick drove the two of them to the Fish Bowl in his 2015 Chevrolet Silverado pickup truck. When they got to the bar, Bostick consumed several more beers and a whiskey-based cocktail.

Near dusk, at approximately 7:30 p.m., the two men left the Fish Bowl to return to Tucker's residence. Bostick was driving, and he did so in such a way as to make Tucker feel nervous and unsafe. Bostick was traveling at approximately 66 miles per hour on Kentucky Route 8, a road zoned for 55 miles per hour. At one point during his travel, Bostick performed a "burnout" by holding down his truck's brake and accelerator at the same time, which resulted in melted tire rubber being cast off on the vehicle's bumper and the roadway. Tucker would later tell law enforcement that Bostick "was driving like a fool."

_____

[4] KRS 304.39-080, penalized in KRS 304.99-060 as an unclassified misdemeanor.

As Bostick continued to travel down Kentucky Route 8, Tucker spoke up to inform Bostick that he was about to miss the turn for the road leading to Tucker's residence. Bostick applied the brakes in such a way that they locked when the truck's anti-lock braking system did not function correctly. The truck rotated and slid over the center line into a Chevrolet Lumina passenger vehicle driving in the opposite direction. After Bostick's truck struck the Lumina, the Lumina then struck the bank alongside the road. Police and first responders arrived quickly. The Lumina's driver, Derek Hettinger, was taken to the hospital where he ultimately died from multiple blunt force injuries. Derek's mother, Valerie Hettinger, was in the front passenger seat of the vehicle. She survived the crash but was severely injured.

Deputies Eric Poynter and Brian Walker, both of the Lewis County Sheriff's Office, worked the scene of the crash and believed Bostick was under the influence. Open beer cans were found in the truck. They observed Bostick had bloodshot eyes, was unsteady on his feet, and smelled of alcohol. Deputy Poynter asked Bostick to perform a horizontal gaze nystagmus (HGN) test. The result reinforced Deputy Poynter's belief that Bostick was impaired. When the deputies informed Bostick he was going to be arrested for DUI, he asked to be taken to the hospital for medical treatment. The charge nurse at the hospital noted that Bostick did not appear to be in distress and that he smelled of alcohol. She drew Bostick's

blood at the request of the Lewis County Sheriff's Office. After testing, the Kentucky State Police (KSP) laboratory reported the blood alcohol content (BAC) of Bostick's blood sample was 0.122 grams per one hundred milliliters (g/100 mL). Bostick refused the offer to take an independent blood test.

Based on this incident, the Lewis County grand jury indicted Bostick on counts of second-degree manslaughter, first-degree assault, DUI, and failure to carry insurance on his vehicle. Bostick's trial was conducted over five days in June 2019, in Lewis Circuit Court. The Commonwealth's case consisted of testimony from law enforcement, the coroner, Valerie Hettinger, and medical personnel conforming to the above narrative. The Commonwealth also presented a recorded deposition from Richard Parkos, a collision reconstruction expert. He testified that the event data recorder (EDR) present in each vehicle showed the relative speeds near the time of the collision. He also discussed how Bostick's truck was equipped with malfunctioning anti-lock brakes which did not prevent the truck's tires from locking up, which in turn caused the vehicle to rotate and slide.

The jury also heard testimony from Senior Trooper Jack Hedges, a KSP collision reconstruction expert, who testified regarding seven separate points from his report. First, Bostick could have avoided the collision. The anti-lock brakes were a contributing factor but not the reason the crash occurred. Second, Bostick was exceeding the speed limit, resulting in a more severe crash. Third,

-4-

Bostick was under the influence of alcohol, which greatly reduced his capability to make sound, split-second decisions while operating a motor vehicle. Fourth, Bostick needlessly applied heavy braking intentionally so as not to miss a turn on to a secondary road, when he could have proceeded past the missed turn and then turned around. Fifth, Bostick failed to recognize that the speed he was traveling meant he could not safely make the turn. Sixth, failure of the anti-lock braking system contributed to the uncontrolled slide of the vehicle. Seventh, and finally, regardless of the failure of the anti-lock brakes, Bostick could nonetheless have avoided the collision by simply releasing the brake to regain traction and control of his vehicle.

For his defense, Bostick chose to focus on the evidence suggesting the anti-lock braking system, and not his level of impairment from alcohol, was entirely to blame for the crash. He asserted there was not sufficient time to correct the rotation of the truck and focused on expert testimony, including that of Richard Parkos, to emphasize the role of the malfunctioning brakes. Bostick did not testify.

Bostick moved for a directed verdict as to the insufficiency of the evidence at the close of the Commonwealth's evidence and renewed his motion at the close of all evidence in the case. The trial court denied both motions. Ultimately, the jury found Bostick guilty of second-degree manslaughter, second-degree assault, DUI, and failure to carry insurance on his vehicle. The jury

recommended a total sentence of fifteen years' imprisonment. On July 17, 2019, the trial court entered its final judgment and sentence in accord with the jury's recommendation. This appeal followed.

## ANALYSIS

Bostick presents two issues on appeal. First, he argues the trial court should have granted his motion for directed verdict. Bostick contends the Commonwealth failed to provide sufficient proof that the crash resulted from anything other than the malfunctioning brakes. We disagree.

> When deciding a motion for a directed verdict "the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given." *Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky. 1991). Questions about the credibility and weight to be given to the evidence are reserved to the jury. *Id.* "On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal." *Id.* (citing *Commonwealth v. Sawhill*, 660 S.W.2d 3 (Ky. 1983)).

*Lamb v. Commonwealth*, 510 S.W.3d 316, 325 (Ky. 2017). Furthermore, "[t]o defeat a directed verdict motion, the Commonwealth must only produce more than a mere scintilla of evidence." *Lackey v. Commonwealth*, 468 S.W.3d 348, 352 (Ky. 2015) (citation and internal quotation marks omitted).

Bostick's argument in favor of directed verdict relies upon his assertion that the proof adduced at trial showed the brakes were entirely at fault for the collision. Bostick's argument has two significant hurdles he cannot overcome. First, the Commonwealth's evidence showed that Bostick was driving under the influence of alcohol, which is enough to prove second-degree manslaughter in a vehicular homicide. "Appellant was indicted for second-degree manslaughter. This offense requires proof of a wanton mental state. One way to prove wantonness is to show that the defendant in a vehicle-homicide case was driving while intoxicated." *Burchett v. Commonwealth*, 98 S.W.3d 492, 494 (Ky. 2003). The jurors could have believed the brakes were to blame for the crash, but they were not required to ignore evidence of Bostick's intoxication as an alternative explanation.

Second, the jury heard testimony from Trooper Hedges asserting the malfunctioning anti-lock brakes were a contributing factor, but they were not themselves responsible for the collision. Instead, Trooper Hedges testified the collision resulted from Bostick's impaired judgment and conduct while driving the vehicle. In ruling on a motion for directed verdict, "the trial court must assume that the evidence for the Commonwealth is true, but reserving to the jury questions as to the credibility and weight to be given to such testimony." *Benham*, 816 S.W.2d at 187. Even if other witnesses had contradicted Trooper Hedges's

testimony and supported Bostick's argument, this would not have justified a directed verdict. "[E]ven when the evidence is contradictory, the credibility of witnesses and the weight to be given to sworn testimony are for the jury to decide." *Roark v. Commonwealth*, 90 S.W.3d 24, 38 (Ky. 2002). In sum, the trial court properly placed this matter before the jury, and, with all reasonable inferences drawn in the Commonwealth's favor, *Benham*, 816 S.W.2d at 187, the Commonwealth's evidence in the case *sub judice* amounted to more than a scintilla. The trial court correctly denied Bostick's motion for a directed verdict.

In Bostick's second argument, he contends the photographs of the "burnout" tire marks on the roadway should not have been admitted into evidence. Bostick argues the burnout marks did not play a role in the collision and, as such, should have been disallowed for being more prejudicial than probative under KRE[5] 403. For its part, the Commonwealth argues the issue is not preserved; Bostick did not object to the introduction of the photographs at trial, nor did he object to the numerous discussions of the burnout markings by trial witnesses. The Commonwealth then argues that this issue may only be reviewed for palpable error under RCr[6] 10.26. However, Bostick does not cite RCr 10.26 in his brief, nor does he request or argue palpable error review under the rule. "Absent extreme

---

[5] Kentucky Rules of Evidence.

[6] Kentucky Rules of Criminal Procedure.

circumstances amounting to a substantial miscarriage of justice, an appellate court will not engage in palpable error review pursuant to RCr 10.26 unless such a request is made and briefed by the appellant." *Dixon v. Commonwealth*, 519 S.W.3d 396, 401 (Ky. App. 2017) (quoting *Shepherd v. Commonwealth*, 251 S.W.3d 309, 316 (Ky. 2008)). "Therefore, we abstain from any substantive analysis of [the appellant's] argument." *Id.* (quoting *Webster v. Commonwealth*, 438 S.W.3d 321, 327 (Ky. 2014)).

## CONCLUSION

For the foregoing reasons, we affirm the judgment and conviction entered by the Lewis Circuit Court.

ALL CONCUR.

| BRIEF FOR APPELLANT: | BRIEF FOR APPELLEE: |
|---|---|
| Michael J. Curtis | Daniel Cameron |
| Ashland, Kentucky | Attorney General of Kentucky |
| | |
| | Jenny L. Sanders |
| | Assistant Attorney General |
| | Frankfort, Kentucky |