## Branch v. Commonwealth.

(Decided September 25, 1923.)

### Appeal from Clark Circuit Court.

1. Criminal Law—Misstatements of Witness to Surprise of Party Introducing Him Must be Called to Attention of Court.—After accaused was taken by surprise in testimony of a witness for her, she should then have so informed the court and moved to set aside

the swearing of the jury and for a continuance, or she could have introduced evidence in contradiction of his statements; but failing to do this, and permitting the jury to continue the case with this evidence before them without objection, she took her chances as to its verdict, and is not entitled to a new trial by reason of the statements of the witness, though such witness files an affidavit to the effect that he was mistaken in his testimony.

2.  Criminal Law—New Trial Not Granted for Cumulative Evidence Not of Convincing Character.—A new trial will not be granted for newly discovered evidence, which is merely cumulative and cannot be said to be of such importance and of such clear and convincing character as to have controlling influence on another trial.

BEN FISHBACK for appellant.

THOS. B. McGREGOR, Attorney General, and CHAS. W. LOGAN, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS—Affirming.

The defendant was convicted of malicious wounding and given a sentence of four years in the penitentiary. The grounds relied upon in the motion for a new trial in the lower court were: (1) misstatement of facts in evidence by one of the witnesses for the defendant; (2) newly discovered evidence. The same reasons are urged for a reversal.

The evidence discloses that the defendant and prosecuting witness are negro women, and that ill-feeling existed between them in regard to some washing. The difficulty occurred in the yard of Harriet Sears.

According to the evidence for the Commonwealth, Harriet was on her porch washing, and the defendant passed down the street by her house and called to her, using some vile epithets, and thereupon broke down the fence and shoved Harriet down and cut her with a knife, inflicting serious wounds upon her hip and wrist while Harriet was lying on her back, the knife being described as having a blade from 2½ to 5 inches long. It is further testified that as she came down the street, before reaching Harriet's premises, the defendant was using offensive language in reference to her.

The evidence for the defendant is to the effect that Harriet was angry with her; that she was passing in front of her house, and that Harriet was standing on the porch with a brick in each hand; she threw one at defendant and missed her, and as she walked on, threw the

second, striking her on the shoulder, in the meantime running out in the yard to the gate where she intercepted the defendant, and the two clinched and fell across the fence, breaking it down; that the defendant had a lady's small pocket knife in her hand and cut the witness once on the wrist; that the witness fell upon the knife and the second wound was thereby inflicted.

In this respect defendant's evidence is somewhat confusing, as she also states that Harriet was lying on the ground and she was standing at the time of the cutting.

No complaint is made as to the instructions or the conduct of the trial, but in her motion for a new trial defendant filed an affidavit of the chief of police—Mullins—in which it is alleged that as a witness at the trial he testified that the knife blade was about 3 1-2 inches long, whereas, in fact, it was not over 1 7-8 inches long; that the knife had been misplaced and he was confusing it in his memory with another that had been in his possession and in good faith made this erroneous description of it.

She also filed the affidavit of one Omer Burns, who stated that on the evening in question he was walking down the street about 40 feet in the rear of defendant, and saw Harriet Sears throw a brick at defendant and miss her, and as defendant approached she ran out in the yard and threw another brick at defendant, which struck her on the shoulder, and the two clinched and fell over the fence; some men came up and separated them and he saw no more. Both he and defendant state that she had no information or notice of his knowledge of these facts until after the trial.

It is claimed by appellant that she was seriously prejudiced by the statements of witness Mullins; that if he had correctly described the length of the knife blade his evidence would have contradicted the Commonwealth's witnesses in that regard and corroborated her, while his erroneous evidence had the opposite effect; that this evidence was material on the question of malice, as the jury might well have believed that a woman who was carrying a long, keen-bladed knife which she used in the manner indicated was inspired by malicious motives, whereas so carrying the character of knife claimed by the defendant would negative the idea that she had anticipated trouble.

It may be conceded that there is some weight in these suggestions, but unfortunately for defendant she is not in a position to avail herself of them. It appears that the witness Mullins was introduced in her behalf and

presumably she and her counsel knew the character of testimony he would give. If taken by surprise in his testimony she could then have informed the court and moved to set aside the swearing of the jury and for a continuance, or she could have introduced evidence in contradiction of his statements. Instead of doing this she permitted the jury to continue with the case with this evidence before them without objection and took her chance as to its verdict. Having done this she cannot now complain of accident or surprise in the statements of the witness. Liverpool, London & Globe Insurance Co. v. Wright, etc., 158 Ky. 298; Ky. Dist. & Whse. Co. v. Wells, 149 Ky. 285; Thompson v. Porter, 4 Bibb, 70; Remley v. I. C. R. R. Co., 151 Ky. 796.

The newly discovered evidence was merely cumulative and it cannot be said that it is of such importance and of such clear and convincing character as to be calculated to have a controlling influence upon another trial. It is therefore insufficient to authorize a reversal. Perkins v. Com., 199 Ky. 128.

Perceiving no error, judgment affirmed.