## Wireman v. Commonwealth.

(Decided May 6, 1924.)

### Appeal from Magoffin Circuit Court.

1. Criminal Law—Evidence of Delivery of Whiskey Held Not Admissible and Prejudicial in Prosecution for Homicide Not Identifying or Showing Motive.—Admission of evidence that while on

way to place of homicide defendant sold and delivered moonshine whiskey was erroneous and prejudicial, being wholly disconnected, and not serving to identify defendant or show motive.

2.  Witnesses—Requiring Defendant to Testify that He Sold Whiskey on Day of Killing Error in Homicide Case.—It was error to require defendant on cross-examination to testify that while on way to place of killing he sold moonshine whiskey, carried in his automobile, since it compelled him to incriminate himself.

3.  Criminal Law—Error to Permit Counsel to Discuss Incompetent Evidence of Other Offense.—Court erred in permitting counsel to discuss in argument to jury evidence of another offense improperly admitted.

4   Criminal Law—Argument of Counsel Held Prejudicial in Homicide Case.—Court erred to prejudice of defendant in permitting counsel in argument to state that defendant was not only a murderer, but a liquor seller as well; sales of liquor not being connected with killing, and evidence thereof being incompetent.

WALTER R. PRATER and H. H. RAMEY for appellant.

FRANK E. DAUGHERTY, Attorney General. and GARDNER K. BYERS, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Reversing.

The appellant, Joe Wireman, September 17, 1923, shot and killed Bill Wireman in Magoffin county near the mouth of Salt Lick creek, a tributary of the Licking river. September 21st, an indictment was returned against him in the Magoffin circuit court by the grand jury charging him with the murder of Bill Wireman; and on his trial in that court for the crime charged, which began September 26, 1923, the appellant, by verdict of a jury, was found guilty of voluntary manslaughter and his punishment fixed at confinement for a period of ten years in the penitentiary. By this appeal he seeks the reversal of the judgment entered upon that verdict.

Only two of the numerous grounds filed in support of the appellant's motion for a new trial, made and overruled in the court below, are urged by his counsel on the appeal for the reversal of the judgment of conviction, viz., error alleged to have been committed by the circuit court on the appellant's trial to the prejudice of his substantial rights. First: In permitting the Commonwealth, over his objection, to introduce incompetent evidence against him. Second: In permitting, over his objection, employed counsel assisting in the prosecution to quote and discuss the incompetent evidence referred to in argument to the jury and urge unwarranted deductions there-

from, that were calculated to and did mislead them and prejudice their minds against the appellant.

A brief statement of the evidence will serve to give a clear understanding of these contentions. The homicide occurred while the appellant was traveling from Salyersville to his home in an automobile accompanied by John Bailey, the latter's wife and infant child and Steve Pinks, a half-grown boy, who was taken into the machine on the road a short distance from the place of the homicide. The appellant, who owned the automobile, was running it, the front seat being occupied by him and Mrs. Bailey, with the child in her lap, and the rear seat by Bailey and Pinks.

Just before arriving at the scene of the homicide, the occupants of the automobile discovered in or at the side of the road ahead of them a group of men, including Abe Wireman, Morgan Wireman, Dane Coburn, Brock Pinks and Bill Wireman, victim of the homicide in question. Some of these men were intoxicated and boisterous and several of them placed themselves in the road, apparently for the purpose of blockading it and stopping the automobile; seeing which the appellant reduced the speed of the machine and, by sounding its horn, gave them warning to free the roadway that it might proceed on its way. But some of the men remained in the road and several of them loudly commanded the appellant to stop; one of their number, Brock Pinks, emphasizing this command by standing in the road and widly waving his hat. The appellant refused to obey the command, drew and laid on the seat beside him a pistol, increased the speed of his automobile and succeeded in forcing its passage through or by the persons obstructing the road without stopping.

In passing them, however, Morgan Wireman threw some rocks at the automobile, at least two of which struck it, and though one of them broke the windshield, none came in contact with any occupant of the machine. When the rocks were thrown Abe Wireman fired two shots from a pistol, neither of which seemed to have entered the automobile. Immediately following the throwing of the rocks by Morgan Wireman and firing of the two pistol shots by Abe Wireman, the appellant fired three or more pistol shots at the group of men passed by the automobile, one of which struck and so wounded Abe Wireman as to cause his death a few minutes later. In a dying declaration

made by him he stated that he was shot by the appellant, and that the shots from his (Wireman's) pistol were not directed at the automobile, but at the ground; and this was corroborated by two others of his party and appears to have been uncontradicted.    The appellant, after shooting at the men passed on the road, stopped the automobile, left it and fled through a nearby field and woodland and thereby escaped immediate capture.

The facts thus far stated, which wholly relate to events preceding the killing of Bill Wireman for which the appellant was tried and convicted, appear to have been established by the evidence without any substantial disagreement between the witnesses of the Commonwealth and those of the appellant.    And with respect to the facts attending that homicide the testimony of the witnesses manifests in large part the same unanimity of statement, the evidence as to which was substantially as follows: That the appellant after abandoning his automobile and fleeing through the field or woods, soon re-entered the public road at a point about a half mile from where he left the automobile, where he was overtaken by a pursuing party consisting of the deceased, Bill Wireman, Clay Joseph and Morgan Mullens, the latter a deputy constable and brother-in-law of Bill Wireman. Mullens and Joseph were not present at the time of the previous attempt by the deceased and others to stop the appellant's automobile but were near enough to hear the pistol shots that were then discharged, which caused them to immediately go to the place of the shooting, where they found Abe Wireman dying and were informed of what had just occurred.

Mullens, acting in his official capacity as deputy constable, at the request of one or more of the persons then present, at once started in pursuit of the appellant for the purpose of placing him under arrest and was accompanied by Bill Wireman and Clay Joseph; but whether Wireman and Joseph were summoned by Mullens as a *posse comitatus* or were mere volunteers does not appear from the evidence.    The three were mounted on horses and soon reached a point from which they saw the appellant walk into the road ahead of them.    The pursuers thereupon hastened to overtake him, Bill Wireman, the deceased, being fifty yards in the lead, and apparently forcing his horse to its best speed.    When Wireman overtook the appellant the latter was awaiting him pistol in hand, with which he shot at him three times, one, or

more, of the bullets entering his body. Frightened by the pistol shots Wireman's horse wheeled and ran back in the direction from which he came, but the rider soon fell from his back on the road and quickly died. Wireman's pistol was found on the ground near his body.

It is patent from the evidence that neither Mullens, the deputy constable, nor any other member of his party was then in possession of a warrant authorizing the appellant's arrest; and if it be conceded that his arrest without a warrant would have been authorized upon the ground that the officer and those with him in good faith believed and had reasonable grounds to believe that he had committed a felony by previously killing Abe Wireman, the evidence of the Commonwealth wholly failed to prove that the appellant was informed by Bill Wireman, Mullens, the officer, or Joseph, the third member of the party, when or before he killed Bill Wireman, of the object of their pursuit of him, or that it was their purpose to arrest him for any offense. Indeed, it was admitted by Mullens and Joseph that they did not hear anything that was said by appellant or the deceased when or before the latter was shot because they were unable to keep pace with deceased and had not gotten near enough to where he and the appellant met to hear the conversation, if any, that occurred between them. On the other hand the appellant testified that the deceased rapidly rode up to him with a pistol in his hand, cursed him and said he was going to kill him; whereupon he (appellant) warned the deceased not to come on him with the pistol, but that the latter disregarded the warning, checked his horse and presented his pistol at the appellant, who then shot and killed the deceased to save his own life, believing that deceased, Mullens and Joseph were following him to kill him. The appellant further testified, that prior to his shooting and killing of the deceased, neither he, Mullens nor Joseph said anything to him about arresting him, and that he did not then know he had killed Abe Wireman or that the latter was in the crowd into which he shot when they attempted to stop his automobile.

The appellant's statement in regard to the speed with which the deceased rode in approaching him and the carrying of the pistol in his hand at the time, was corroborated by Mullens and Joseph, as was his testimony to the effect that neither of them said anything to him before the shooting about arresting him.

It cannot be ascertained from the evidence whether the appellant was related by blood or otherwise to Abe or Bill Wireman, the men slain, or what relationship, if any, there was between Abe and Bill. It does appear, however, that Morgan Wireman, who threw the rocks at the appellant's automobile, was a brother of Bill Wireman.

The evidence complained of by the appellant as incompetent was a statement made by Mrs. John Bailey, a witness for the Commonwealth, on her examination in chief, that the appellant, on the day of the homicide in question, and while on the way to the place of its occurrence, sold and delivered to purchasers thereof three quarts of moonshine whiskey carried in his automobile. A like statement was obtained from the appellant by the Commonwealth on his cross-examination. The appellant objected to this evidence when offered by the Commonwealth and stated by the witnesses and duly excepted to the overruling of his objections by the court. This evidence was clearly incompetent and necessarily prejudicial to the substantial rights of the appellant, as his sale of the liquor constituted a separate offense, or offenses, wholly disconnected from the homicide for which he was being tried; and moreover, his enforced confession of the sale of such liquor was incompetent for the additional reason, that it compelled him to incriminate himself. From no conceivable standpoint could this evidence have served any legitimate purpose in this case, as it did not serve to connect the appellant with the commission of the crime, was not needed to identify him as the guilty party nor did it in any way conduce to show his motive therefor. Watson v. Comlth., 132 Ky. 46; Romes v. Comlth., 164 Ky. 334; Herring v. Comlth., 200 Ky. 304; Partin & Allen v. Comlth., 197 Ky. 840. It follows from what has been said that the admission by the court of the evidence in question was reversible error.

It is equally clear that the trial court erred to the prejudice of the appellant's substantial right in permitting counsel to quote and discuss this evidence in argument to the jury. This will readily be understood from the following statements made by the counsel in his argument:

"The defendant is not only a murderer but a liquor seller as well. . . . The defendant's day's work was not yet done. He had sold his three quarts

of whiskey, had killed Abe Wireman and now he must kill Bill Wireman. . . . The crowd who were present at the first difficulty in which Abe Wireman was killed might have been liquor drinkers, but they were not liquor sellers. . . . That the taxpayers of the state could spend their money and erect courthouses until their domes would kiss the clouds, but as long as men were permitted to bootleg whiskey the law against murder would never be enforced.''

These inflammatory and prejudicial comments thus made upon the incompetent evidence in question were calculated to divert and must have diverted the minds of the jury from the real issues under consideration and inflamed their passion and prejudices against the appellant to such an extent as prevented him from receiving a fair and impartial trial. Such arguments thus based upon incompetent and highly prejudicial evidence have repeatedly been condemned by this court, and the failure of the court when appealed to by the appellant to exclude such remarks from the consideration of the jury declared reversible error. Stroud v. Comlth., 160 Ky. 503; Childers v. Comlth., 161 Ky. 440; Slaughter v. Comlth., 149 Ky. 5.

As the case must again be tried we refrain from expressing an opinion as to the weight or effect of the evidence, further than to say that it seems sufficient to authorize the submission of the case to the jury. For the reasons indicated the judgment is reversed and cause remanded for a new trial, not inconsistent with the opinion.