## Rowlett v. Commonwealth.

(Decided January 24, 1928.)

Appeal from Bell Circuit Court.

1. Criminal Law.—Ordinarily, when evidence improperly admitted is withdrawn from jury's consideration and jury is admonished, it is

presumed that they will be controlled by court's admonition and that no prejudice resulted.

2. Criminal Law.—Party objecting to evidence improperly admitted, who believes withdrawal of evidence and court's admonition to jury is insufficient to cure error, should move court to discharge panel, and may not speculate with court by election to try case with the same jury and then insist on appeal that error was prejudicial, when decision has gone against him.

3. Criminal Law.—In murder prosecution, where evidence concerning statements that defendant shot in mere bravado and that he had some power over certain woman was improperly admitted and subsequently excluded on motion of commonwealth's attorney, defendant, who failed to move court to have panel discharged but went ahead with case before same jury, waived any objection that such evidence was prejudicial on ground that exclusion thereof and court's admonition was insufficient to cure error, though prosecourt's introduction of incompetent evidence with expectation of withdrawing it, if done knowingly, was conduct of reprehensible nature.

4. Criminal Law.—Where evidence of child testifying in murder prosecution indicated that deceased was running to the door when defendant fired shot, and where it appeared that fatal shot entered back of deceased, who had no weapon and was physically inferior, statement of commonwealth's attorney in argument that child testified defendant shot deceased "as he was running away from this defendant, with his back to him," and that deceased "was doing nothing to this defendant," held not misconduct warranting reversal.

5. Criminal Law.—Statement of commonwealth's attorney, in argument in murder prosecution, that defendant claimed to have shot and killed crippled and retreating man "was just as guilty as if he had gone over there and grabbed . . . 11 year old girl . . . and strangled her to death," held not error, as misconduct, since no statement of fact was involved.

JAMES M. GILBERT for appellant.

J. W. CAMMACK, Attorney General, and M. B. HOLIFIELD, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS—
Affirming.

Baylor Rowlett was tried for murder, convicted of manslaughter, and sentenced to the penitentiary for 10 years. On this appeal the instructions are not criticised, and the only grounds urged for reversal are the introduction of incompetent evidence for commonwealth and misconduct of the commonwealth's attorney in the in-

troduction of evidence and in his closing argument. A consideration of these questions requires a statement of the facts.

It appears that the Lee Tailoring Company, the Poe Restaurant, and Floyd Ball's Pool Room adjoin; the restaurant being in the center and all facing Cumberland avenue in the city of Middlesboro. The deceased, Bud Yoakum, ran the pool room. The defendant, Baylor Rowlett, worked for the tailoring company and took his meals at the Poe Restaurant, which was arranged with a cigar stand and lunch counter to the left of one facing the rear from the front entrance. The counter extended back to a partition between the dining room and kitchen; the rest of the room being filled with tables, except an aisle between the counter and tables, there being a 10x12 foot mirror on the partition wall in the rear which enabled one facing in that direction to see all that transpired in the room. Yoakum had been incensed at Rowlett for some months over a report which he claimed Rowlett had repeated to a Mrs. Haslet of whom Yoakum was enamoured, and which had caused an estrangement between them. Following this, Yoakum had ordered Rowlett to quit working for the tailoring company and to leave town, had cursed him repeatedly, and had constantly referred to him in the most contemptuous and vilest language, had repeatedly threatened his life in his absence, and had done this on several occasions to his face, at one time presenting a pistol. Rowlett was timid and afraid of Yoakum and in desperation purchased a pistol, stating to different witnesses that he feared Yoakum would kill him or that he would have to kill Yoakum, that and when the time came he would be ready for the contest, though it appears that Yoakum was physically much smaller than Rowlett and that he was crippled in his right arm.

The tragedy occurred about 7 p. m. on a Saturday in July, 1925. Rowlett started to supper from the tailoring shop, but, seeing Yoakum in front of the poolroom, went back through the tailoring shop to avoid meeting him and entered the restaurant through the kitchen at the rear end, and took his seat at the second table from the partition and facing it; there being four tables to his back. He ordered his supper from Mrs. Poe, and later Mrs. Poe's sister, Mrs. Stringer, brought him a glass of water and sat down opposite him and the two engaged in conversation. About ten minutes later Yoakum entered

the front door. He was in his shirt sleeves, had 15 cents in his hand, and was not visibly carrying any weapon. He stopped at the cigar stand and ordered a ham sandwich. Mrs. Poe went for this, and Yoakum went down the aisle to where Rowlett sat. There is some conflict as to what he then did, but Rowlett fired three shots from a pistol, one of which struck the counter and another passed through Yoakum's wrist, flattened and struck him on the hip without entering his body. The third entered his body three inches to the right of the spine, and ranged upward and forward through his body some three inches to the left of the median line in front. Yoakum walked back through the kitchen and into the pool room through the rear door, went forward to a desk in which two pistols were kept, opened the drawer, and Floyd Ball took his hand. He then lay down on the floor and expired within five minutes. Ball testifies that he neither removed nor placed anything in the desk, and that he only had 15 cents in his hand. A number of witnesses testify that he was unarmed.

Returning to the scene of the tragedy, it appears that, aside from the participants, only four witnesses were present. Mr. Poe states that he followed Yoakum into the restaurant and took a seat near the front end of the counter. Ed Logan was with Yoakum, who was laughing and joking. He did not see Yoakum as he walked back, but heard the first shot and upon looking saw Rowlett standing and shooting at Yoakum, who walked on. Logan corroborates Poe, and states that he took a toy pistol from off the counter and jokingly said to Yoakum that he would hold him up, and that Yoakum walked down the counter in the direction Mrs. Poe had gone. As he reached Rowlett, the latter arose and began to shoot. He did not see Yoakum do anything. Mrs. Poe was in the kitchen at the time of the shooting. However, she denies hearing Yoakum laughing and joking with Poe and Logan, and denies the cap pistol transaction, and did not see Logan at the time, whose presence is also denied by other witnesses. The defendant testifies that he was not aware of Yoakum's presence until the latter struck him in the face, knocking off his glasses, and telling him that he was going to shoot him, and dropping his hand toward his pocket. He was confused and fired three times in self-protection. Bernice Poe, the 11 year old daughter of the proprietor, was near the center of the rear of the building. She heard her aunt scream,

and saw Yoakum strike Rowlett on the chin and drop his hand toward his pocket. Rowlett began to arise and fired three times. Yoakum passed by, and he continued to fire; the last shot being fired as Yoakum reached the kitchen door.

Under this evidence, the jury might have reached the conclusion that Yoakum knew Rowlett was afraid of him and undertook to bully him in the presence of the ladies, that perhaps he was armed, or, at any rate, that he placed Rowlett in real or *apparent* danger of great bodily harm, and that Rowlett was justified in shooting in self-defense. On the other hand, it may have concluded that Rowlett was a coward, and, when armed with a deadly weapon, became dangerous to the man he feared, and actuated by fear, fired the fatal shot at a time when he was not in real or apparent danger; hence it cannot be said that the verdict is not sustained by the evidence.

The incompetent evidence referred to relates to the contradiction of Mrs. Poe, both as to questions asked her and as to those asked Mrs. Yoakum in contradiction. Several of the questions alluded to were competent, but some were incompetent, as follows:

"Q. 19. 'Didn't you say to Mrs. Yoakum on that occasion at her home, . . . that Baylor Rowlett had some power or hold on your sister some way?'

"Q. 20. Didn't you say this in talking about this case about your sister and Baylor, didn't you say 'Rowlett, the old drunken dog, had some power or hold on my sister in some way?' "

"Q. 30. Did you say to Mrs. Poe, I mean Mrs. Yoakum, 'Mrs. Yoakum, Baylor Rowlett had been on a two weeks' drunk and had run off nearly all of our customers, and that you knew after Bud passed Baylor Rowlett he just began shooting Bud in an act of bravado?' "

Objections were overruled to each of these questions and exceptions taken. The questions were answered in the negative. Mrs. Yoakum was later introduced as a witness and asked as to these questions, and, over the objection and exception of defendant, answered in the affirmative. The court admonished the jury as to the effect of the evidence, whereupon the commonwealth's attorney stated:

"After *reflection*, I think I should and I wish to withdraw the question that I asked Mrs. Poe and the

testimony of this witness, in contradiction of that, wherein it is alleged that she stated to Mrs. Yoakum that she knew that Rowlett just got up there and shot in mere bravado. I wish to withdraw that.''

The court sustained this motion, and admonished the jury that it was only an opinion of the witness and they would not consider either in Mrs. Poe's or Mrs. Yoakum's testimony, and defendant objected. The commonwealth's attorney also said:

"I wish to withdraw another portion of the testimony of Mrs. Yoakum and the question on that subject which I asked Mrs. Poe, and I wish the court now to permit me to withdraw this testimony wherein I have alleged and claimed that Mrs. Poe said to Mrs. Yoakum on the occasion stated, 'The old drunken dog had some power over her sister.' ''

Whereupon the court said:

"Gentlemen, you have heard the statement of the commonwealth attorney withdrawing that part of the testimony of Mrs. Poe and Mrs. Yoakum which Capt. Golden quoted, and you will not consider that for any purpose, but disregard it.''

Admittedly this evidence was incompetent, and the commonwealth's attorney should have known so. If he knowingly introduced such incompetent evidence for the purpose of prejudicing the jury against Mrs. Poe and her sister Mrs. Stringer and with the expectation of withdrawing it in the manner that he did such conduct was reprehensible and cannot be condemned too strongly. On the other hand, if the questions were asked through excessive zeal and bona fide withdrawn upon reflection, the criticism should not be so caustic. But, while the evidence was improperly admitted, it was withdrawn from the consideration of the jury by the court and counsel both of whom thereby admitted the evidence was incompentent. Ordinarily, when evidence is thus withdrawn and the jury admonished, it is to be presumed that they will be controlled by such admonition and no prejudice result therefrom. If the complaining party does not think this sufficient to remove the wrongful impression from the minds of the jury, he should move the court to discharge the panel and thus save that point. But it is not permissible for him to speculate with the court by electing to try the case with the jury who had heard the

excluded evidence and when they decide against him to insist that the error was prejudicial. Branch v. Com., 200 Ky. 227, 254 S. W. 746; Liverpool & London & Globe Ins. Co. v. Wright, etc., 158 Ky. 298, 164 S. W. 952; Ky. Dist. & Whse. Co. v. Wells, 149 Ky. 285, 148 S. W. 375; Thompson v. Porter, 4 Bibb. 70; Remley v. I. C. R. R. Co., 151 Ky. 796, 152 S. W. 973; Perkins v. Com., 199 Ky. 128, 250 S. W. 810. So that, if this conduct of court and counsel should be regarded as prejudicial, appellant is not in a position to avail himself of their error.

It is next insisted that the commonwealth's attorney was guilty of misconduct in his closing argument, in saying, "That the little girl, Bernice Poe, had testified that this defendant shot Bud Yoakum as he was running away from this defendant, with his back to him;" and at a time when "Yoakum was doing nothing to this defendant."

A reference to the evidence of the little girl, however, shows that the commonwealth's attorney was not guilty of misconduct in placing this construction upon her language, viz.:

"Q. What became of Mr. Yoakum when the shooting started? A. Rowlett was shooting and Bud running to the door, and he didn't get to the door when he fired the last shot.

"Q. What became of Baylor? A. He ran out of the front door.

"Q. How close was Bud and Baylor when the last shot was fired to each other? A. About 3 feet.

"Q. When the last shot was fired, what did Bud Yoakum do? A. He went through the door.

"Q. Toward the rear part of the room? A. Yes, sir."

In view of the fact that no person claims that Yoakum did anything to Rowlett after striking him in the face, of Rowlett's physical superiority, of the admitted fact that Yoakum had no weapon in his hand and of the further fact that the fatal shot entered from the back, we do not think the commonwealth's attorney abused his privilege in the statements quoted. The further statement of the commonwealth's attorney was:

"This defendant committed just as bad a crime in shooting Yoakum, and this defendant was just as guilty as if he had gone over there and grabbed that

little 11 year old girl, Bernice Poe, by the throat and strangled her to death.''

In this statement the commonwealth's attorney was not making a statement of fact. He was simply comparing the defendant's action in shooting a crippled and retreating man with the act of strangling a child. We think he had a right to make this comparison, even though it might not hold good as a matter of logic.

Other objections are made but not of a character to warrant a further discussion.

Wherefore, perceiving no error, the judgment is affirmed.