**Bud JONES, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

March 7, 1958.

Clyde E. Vincent, Covington, for appellant.

Jo M. Ferguson, Atty. Gen., Edward L. Fossett, Asst. Atty. Gen., for appellee.

CAMMACK, Judge.

The appellant, Bud Jones, was found guilty on a charge of voluntary manslaughter for shooting William Cook, and his punishment was fixed at eight years in prison. The appeal is from a judgment based on that verdict.

The appellant urges reversal upon the following grounds: (1) Misconduct of the Commonwealth's Attorney during and after the trial; (2) errors of the trial court in failing to instruct the jury on the whole law of the case; (3) error of the trial court in admitting as evidence a statement obtained from him in violation of KRS 422.-110; and (4) he was entitled to a directed verdict because the Commonwealth's evidence showed he acted in self-defense. We discuss first grounds 3 and 4 after a brief statement of the evidence.

William Cook was shot twice through the neck by Bud Jones shortly after 10:00 p. m. on the evening of February 11, 1957, in Jones' home in Covington. One of the bullets entered the neck on the posterior left side and emerged at the level of the larynx. This bullet was later found in the linoleum between the bedroom and kitchen. The other bullet entered toward the side of the neck and lodged at the level of the second cervical vertebra. The police were called. Cook died on the way to the hospital.

Jones and Cook were acquaintances of long standing. Approximately a year before the killing and while they were together in Ohio, they got in an argument over some groceries and Cook broke several of Jones' ribs. Apparently they made up and were together on occasions before the shooting. On the day of the killing Cook and his mistress, Myrna Wagner, went to Jones' apartment about 2:00 p. m. Jones was not at home, but his mistress, Nora, admitted the couple. Jones referred to Nora as his common law wife. A man named Petticord was present also. Myrna furnished the money for some wine and the four sat around the table in the kitchen drinking and talking until Jones came home. They consumed about four fifths of wine. Cook got belligerent and shortly before Jones' arrival at 7:00, he hit Myrna during an argument over money.

Jones testified that he had not been drinking before arriving home and that he did not drink anything afterward. Shortly after Jones came home, Cook and Nora (Jones' mistress) got in an argument over the guest-furnished wine and Cook struck Nora and tore her dress. Jones seems not to have taken part in that ruckus, but he did get his pistol from a dresser in the bedroom.

Only Jones and Myrna (Cook's mistress) testified—Nora and Petticord not appearing as witnesses. They testified that around 10:00 p. m. Cook grabbed a knife from the cupboard and said he was taking over the place. Cook sent Myrna into the bedroom to search for Jones' gun. At that time Jones was sitting at the table and Cook was nearby with the knife in his hand. Jones said he was begging Cook, "Don't do this to me." Myrna said Jones was trying unsuccessfully to reason with Cook. Some of Cook's threats and Jones' responses were heard by a couple living downstairs, but

the evidence is conflicting as to the lapse of time between the threats and the gunshots.

While Myrna was searching for the gun, Cook moved near, or into, the bedroom door. At that time, Jones, who was about four feet from the bedroom door, rose and shot Cook. Cook fell, with his head and the upper part of his body in the kitchen and the remainder in the bedroom. He was in that position when the police arrived. Myrna was still in the bedroom and Jones was in the kitchen. Nora and Petticord were not on the scene. Jones thought Cook was dead, but Myrna thought he was alive. Five empty and one partially empty fifth wine bottles and two empty pint wine bottles were on the kitchen floor. When the life squad arrived a large butcher knife was found beneath Cook's body. Cook had not been cut in any way. The knife was not examined for fingerprints. The wounds inflicted by the two bullets mentioned heretofore were the cause of Cook's death.

■ The appellant contends that a statement was obtained from him in violation of KRS 422.110, the anti-sweating statute, because he was intoxicated and without counsel at the time it was taken at the jail. He argues, therefore, that the statement was inadmissible as evidence. There is no evidence of "sweating" or other coercive measures used by the police in obtaining the statement from Jones and we fail to see where any violation of KRS 422.110 occurred. The appellant stated on the witness stand that his testimony and the statement he gave the police did not differ in any major respect. The trial court ruled properly that the statement was competent and admissible.

■ The appellant argues that the trial court should have sustained his motion for a directed verdict at the conclusion of the Commonwealth's evidence. He insists the Commonwealth's evidence shows conclusively that he was acting in self-defense or in defense of Nora, when he shot Cook. We believe that the evidence concerning the paths of the bullets in Cook's neck, which indicated that Cook was not facing Jones at the time he was shot, raised an issue as to whether Jones' acts were in self-defense. The bullet which passed through Cook's neck was found imbedded in the linoleum. This fact indicates that, contrary to Jones' testimony, one of the shots was fired while Cook was face down on the floor. There was sufficient evidence of probative value to warrant the submission of the case to the jury. Parsley v. Commonwealth, Ky., 273 S.W.2d 372.

During the course of the trial the Commonwealth's Attorney asked one witness about the "murder" of Cook and stated to Jones while he was on the witness stand, "You wanted to kill in cold blood." Jones had been indicted and was being tried for voluntary manslaughter—not murder. After the trial, and during the time the motion and grounds for a new trial were pending, the front page of the Kentucky edition of the Cincinnati Enquirer carried a story concerning telephone threats to the Commonwealth's Attorney. He was told to "get Jones a new trial or else," according to the story. The appellant insists that the conduct of the Commonwealth's Attorney during and after the trial was abusive and that the law protects an accused from vilification and abuse during the course of his trial.

■ Admittedly, the language used by the Commonwealth's Attorney was improper. Jones was being tried for voluntary manslaughter—not murder, but the trial court gave admonitions which were sufficient to cover the situation. The verdict of eight years was far below the maximum penalty of 21 years. Under the circumstances we do not think Jones' substantial rights were prejudiced. See Rowlett v. Commonwealth, 222 Ky. 695, 2 S.W.2d 378. We take the same view of the newspaper stories appearing before the trial court overruled the motions and grounds for a new trial.

The appellant contends that the instructions were erroneous for the following reasons: (1) Instruction One included the word "feloniously," which was improperly defined in Instruction Four to mean "* * proceeding from an evil heart or purpose, done with deliberate intention to commit a crime"; (2) failure to define the phrase "provocation reasonably calculated" thereby depriving the jury of a standard to measure a sufficient provocation; (3) failure to give an instruction on involuntary manslaughter; and (4) failure to give an instruction on drunkenness.

The appellant argues that the use of "feloniously," when considered in connection with its subsequent definition, contradicts the phrase "without previous malice," and constituted prejudicial error. We have approved the trial court's definition in murder cases. See Ewing v. Commonwealth, 129 Ky. 237, 111 S.W. 352, 33 Ky.Law Rep. 749; See also Stanley's Instructions to Juries, section 868, notes 29–36, but we have found no case wherein we have approved such a definition in a voluntary manslaughter instruction.

■■ From the standpoint of definition, voluntary manslaughter is an intentional, unlawful homicide without malice aforethought. See Dean v. Commonwealth, 260 Ky. 97, 83 S.W.2d 887. For a complete analysis see Moreland, Law of Homicide, Chapter 9, pp. 64–98. Though the homicide is felonious, if it is committed due to adequate provocation, without previous malice, it is voluntary manslaughter. The words "evil heart," however, connote previous malice rather than provocation, and are improper in an instruction on voluntary manslaughter. Their inclusion, however, required a degree of proof sufficient to convict for murder, and the appellant could not have been prejudiced by the requirement of such a high degree of proof for conviction on a lesser charge.

■ It was not error for the trial court to omit a definition of "provocation reasonably calculated," Dodd v. Commonwealth, Ky., 255 S.W.2d 464, 466. But the appellant argues that the instruction given should have been extended to cover defense of home and family. An instruction on defense of home and family was not warranted where the evidence indicated that Jones (1) was not perturbed at the abusive treatment given Nora by Cook early in the evening, (2) had not commanded the deceased to leave, and (3) was relying solely on self-defense. See Stanley's Instructions to Juries, section 888. See also Duff v. Commonwealth, 250 Ky. 555, 63 S.W.2d 593.

■ An instruction on involuntary manslaughter was not warranted. Jones' statements indicate that he intended the result produced by his shots; therefore, he was not entitled to an instruction on the offense defined in KRS 435.050 (i. e., willfully shooting, not intending to cause death). Involuntary manslaughter is not a degree of the specific statutory offense of voluntary manslaughter, as argued by the appellant.

■ The only evidence concerning intoxication of the appellant was that introduced by the prosecution. The appellant testified that he had not been drinking. It follows that he was not entitled to an instruction on drunkenness as a defense, and it was not error for the trial court to fail to give such an instruction. Furthermore, under the circumstances, drunkenness could only have reduced the offense from murder to voluntary manslaughter—the offense for which the appellant was indicted.

On the whole case we believe the appellant had a fair trial. The self-defense instruction covered adequately his version of the shooting. Under the evidence, the penalty of eight years was a lenient one when considered in light of the maximum of 21 years, and was not the result of passion and prejudice on the part of the jury.

Judgment affirmed.