Alonzo SIZEMORE, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

June 2, 1961.

Grant F. Knuckles, Pineville, Stephen Combs, Jr., Whitesburg, J. E. Sanders, T. L. Hibbitts, Pikeville, for appellant.

John B. Breckinridge, Atty. Gen., Wayne J. Carroll, Asst. Atty. Gen., for appellee.

PALMORE, Judge.

Alonzo Sizemore, charged with the wilful murder of Manuel Bentley, was found guilty of voluntary manslaughter and his penalty fixed at 21 years in the penitentiary. He appeals.

The tragedy occurred at the American Legion Club in the town of Fleming, in Letcher County, on the night of March 4, 1960. Trial was had in Pike County under a change of venue. Sizemore, a deputy sheriff of Letcher County, was the landlord of the premises and lived upstairs over the club. On the evening in question the decedent and his brother, Roy "Karo" Bentley, both having imbibed of alcoholic beverages over a period of several hours, began to scuffle or fight with each other in the club. Efforts to separate them were unsuccessful, and the custodian summoned Sizemore in his apartment upstairs to come down and restore order. In the course of getting the two brothers out the front door after forcibly separating them Sizemore shot Manuel Bentley in the back, and the wound proved fatal a week later. Sizemore had purposely fired one shot into the floor before the shooting of Bentley, but he claims that the fatal shot was accidental and unintended. The evidence conflicts as to whether he had placed the Bentleys under arrest.

The indictment was returned on April 18, 1960. It charged that Sizemore with malice aforethought wilfully and feloniously shot Manuel Bentley with a pistol on April 13, 1960, (sic) "from which shooting the said Manuel Bentley did later die." Sufficiency of the indictment was attacked on the ground it did not show that death occurred within a year and a day after the shooting. Cf. Conner v. Com., 1878, 13 Bush 714, 719, 76 Ky. 714, 719; Roberson, § 281. However, where the indictment states when the wound was inflicted, is returned within a year and a day thereafter, and says the victim is dead, its necessary import is that the death occurred in the interim. Milburn v. Com., 1928, 223 Ky. 188, 3 S.W.2d 204.

Citing Lewis v. Com., 1910, 140 Ky. 652, 131 S.W. 517, Sizemore contends he was entitled to the instructions indicated in that opinion. The facts are analogous in that Lewis, a police officer charged with killing a person whom he had placed under arrest for a misdemeanor, claimed the fatal shot was unintentionally fired. The court said, in effect, that (1) in lieu of the ordinary instruction on voluntary manslaughter (sudden affray or sudden heat and passion) the jury should have been instructed on the theory of voluntary manslaughter by

reckless shooting, (2) the involuntary manslaughter instruction should have embraced the theory of ordinary negligence, and (3) an instruction should have been given to the effect that if Lewis exercised reasonable care and death resulted from an accidental and unintentional shooting he should be acquitted.

■ The principal difference between the two cases is that in this one the circumstances warranted the usual voluntary manslaughter instruction on sudden affray or sudden heat and passion as well as the instruction based on "reckless, wanton or grossly careless" handling of the gun, and we find that all of these theories were properly embraced in the trial court's Instruction No. 3, which followed the form of the first instruction set forth in Stanley's Instructions, § 883. Instructions No. 4 and No. 7 were taken from the second and third instructions in § 883 of Stanley and represent the theories of involuntary manslaughter and purely accidental shooting. We conclude, therefore, that the instructions given by the trial court did comply substantially with the Lewis case. (In this connection, we do not find in that opinion any suggestion of special shooting rights in an officer who has arrested a misdemeanant.)

■ There is, however, a basic error in the form of the second instruction set forth in § 883 of Stanley in that a conviction of involuntary manslaughter is authorized in the event of an "unintentional *or* careless" discharge of the pistol (italics added), whereas it should be unintentional *and* careless. See, for comparison, correct phraseology employed in the second instruction of Stanley § 886. Upon a new trial of this case, or the trial of any other case in which § 883 of Stanley may be applicable, the instruction in question should be corrected accordingly.

■ We are of the further opinion that although Sizemore did not have the right to shoot anyone under the circumstances of the case, yet it was not wrongful in itself for him to display his pistol in carrying out his duty as a peace officer to quell a public disturbance. Therefore, upon another trial Instructions No. 3 and No. 4 (Nos. 1 and 2, Stanley § 883) should be further amended by deletion of the words, "in flourishing it in a threatening or boisterous manner or," and "in doing a wrongful act, such as flourishing a pistol in a threatening or boisterous manner, or," respectively.

It is next contended that the court should have instructed on KRS 435.050, which provides as follows:

"Any person who willfully strikes, stabs, thrusts, or shoots another, not intending to produce or cause his death, and not in self-defense nor in an attempt to keep and preserve the peace nor in the lawful arrest or attempt to arrest a person charged with a crime, nor in doing any other legal act, so that the person struck, stabbed, thrust or shot dies from the injury within six months, shall be confined in the penitentiary for not less than one nor more than six years."

■ This statute does not embrace Sizemore's theory of defense, because it applies to a *wilful*, or intentional, act resulting in an unintended death, whereas Sizemore claims that the firing of the shot was not wilful, but an accident. Nor is the offense a degree embraced within the charge of murder. Conner v. Com., 1878, 13 Bush 714, 76 Ky. 714; Buckner v. Com., 1879, 14 Bush 601, 77 Ky. 601. Therefore, there is no principle under which an instruction under this statute should or could have been given. Neither Jones v. Com., Ky.1958, 311 S.W.2d 190, 194, nor Bass v. Com., 1944, 296 Ky. 426, 177 S.W.2d 386, 389, implies otherwise. In each of those cases the defendant admittedly intended not only the *injurious act* but the *fatal result* as well, and for that reason was not entitled to the instruction.

Over objections by the defense, followed by appropriate motions for discharge of the jury, the Commonwealth was permitted to develop the fact that Sizemore, a deputy sheriff, had been in and around the American Legion Club from time to time on previous occasions while alcoholic beverages were being delivered and sold there and that Letcher County was a dry territory. One state witness was asked in so many words, "You mean by a dry county that it is a violation of the law to traffic in alcoholic beverages?" and was allowed to answer, "Yes, it is." The subject was further pursued on cross-examination of Sizemore himself, who was forced to admit that he had observed beer cans and whiskey bottles in the garbage container and, in practical effect, must have known that drinking was going on in the place but had never made an arrest. Since he admitted without objection that he had once raided the club at another location, before it was moved to his premises, the inference was that he had exercised the power of his office to force the Legionnaires to rent from him. All of this was argued to the jury by the Commonwealth's Attorney in his closing summation, again over objection and with a motion to discharge the jury. The line of argument is illustrated by the following excerpts referred to in the bill of exceptions:

"This defendant swore a lie when he took his oath as a deputy sheriff because in his oath he swore that he would enforce the laws of the Commonwealth of Kentucky, and this evidence shows that he never did raid this Veterans' Club even though he knew it was selling liquor in dry territory, and even had seen liquor unloaded at the club, and he did all of this while he was a deputy sheriff. How can you believe him now when he violated his officer's oath?"

"This would not have happened if the defendant had not raided one Veterans' Club in order to put it out of business where it was and get the club located in his building."

"The defendant never did raid this Veterans' Club while it was in operation and even though he was a deputy sheriff at the time protected the place and in so doing violated his oath of office, and he is unworthy of belief here in this case."

■ The appellant was being tried on a charge of homicide. Bringing the jury's attention to his derelictions as an officer could have had but one purpose and one effect, and that was to create prejudice and disfavor against him. These matters had nothing to do with the state of his intentions when he fired the fatal shot, which was the crux of the inquiry. They were an irrelevant and improper subject of consideration. Hence their admission over objection was error and the prejudicial effect manifestly substantial. There is no reasonable distinction in principle from Wireman v. Com., 1924, 203 Ky. 57, 261 S.W. 862.

■ It is argued in the Commonwealth's brief that the evidence in question was competent to show a possible motive for the killing, in that Sizemore was seeking to protect illegal activities from which he, as the landlord, derived monetary benefit. We are inclined to view this theory as more ingenious than sound. It seems hardly credible that any rational man would undertake to protect an illegal business by intentionally shooting a customer and exposing the whole situation to public scrutiny.

■ Upon a new trial all testimony relating to the presence, sale and consumption of alcoholic beverages on the premises previous to the events immediately leading up to and surrounding the fatal shooting; Sizemore's acts and omissions with respect to prior raids, arrests, and observations of law violations; the screening of doors and windows in the club; and Letcher County's

being a dry territory will be excluded on proper objection.

On cross-examination Sizemore admitted that he had once been convicted of a federal prohibition offense and sentenced to 15 months' imprisonment. Later, when the sheriff was put on the stand to testify that Sizemore was his deputy at the time of the shooting, he was asked by the Commonwealth if at the time of his appointment as a deputy Sizemore had informed him of his previous felony conviction. Over objection, he answered in the negative. This also was plainly incompetent and should not be permitted on retrial of the case.

Judgment reversed and cause remanded with directions to grant a new trial.