**Alonzo SIZEMORE, Appellant,**

**v.**

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

May 11, 1962.

J. Ervin Sanders, Sanders & Redwine, Pikeville, for appellant.

John B. Breckinridge, Atty. Gen., William F. Simpson, Asst. Atty. Gen., Frankfort, for appellee.

STEWART, Chief Justice.

Appellant, Alonzo Sizemore, was convicted of voluntary manslaughter and sentenced to prison for 21 years. KRS 435.020. This was the second trial of the offense, and the appeal from the first conviction is reported in 347 S.W.2d 77 under the same style as the instant case.

The shooting occurred at the American Legion Club in Letcher County. Appellant, a deputy sheriff, owned the building and lived in an apartment upstairs. On March 4, 1960, Manuel Bentley, who was slain, and his brother, Roy Bentley, both of whom had been drinking, started a fight in the club. Appellant was called downstairs to separate the two brothers and, while he was herding them out the door, he shot Manuel Bentley in the side. The latter died one week later.

from the wound. Appellant claimed the shooting was accidental. He was indicted by the Letcher County grand jury, but the trial that resulted in his conviction was moved to Pike County after a motion for a change of venue was sustained.

On this appeal, appellant first urges as a ground for reversal that the lower court should have set aside the swearing of the jury and continued the case because of certain statements made by Roy Bentley while testifying for the Commonwealth.

■ On direct examination this witness was asked: "What if anything was said there? Just take your time and tell the jury as to what occurred at the time that Mr. Sizemore came in." In his response the witness made a long, detailed answer, which was interrupted by several questions. He concluded by telling of an occurrence that was not related by him at the first trial. He said: " * * * Then about that time Mrs. Sizemore arrived at the scene, from upstairs, and she said 'Lord God, Alonzo, have you shot another man?'" Appellant's counsel objected to this statement and moved to exclude it. The trial judge sustained the objection and told the jury not to consider the remark. But the witness, unmindful of the trial judge's ruling, kept talking. He said: "And so he says 'Yes, I sure have' and so—." Appellant's counsel then moved to set aside the swearing of the jury and continue the case because of "that statement." The lower court overruled the motion, appellant's counsel reserving an exception to this ruling.

Appellant argues that the language of the witness above quoted was shocking and, as a consequence, he did not receive a fair and impartial trial; and that the trial court's action in overruling his motion amounted to an abuse of discretion. The Commonwealth contends the statement was part of the res gestae of the whole event and admissible as such, as it was substantially contemporaneous with the entire act. At any rate, the Commonwealth points out that the court promptly admonished the jury

to disregard the evidence and appellant could not have been prejudiced thereby.

We believe the admonition given to the jury to disregard the answer, for the reason that it was not competent, may be presumed under the circumstances to have the effect of preventing any prejudice to appellant's substantial rights. The statement in and of itself does not make specific reference to any other crime committed by him. Moreover, the fact that a deputy sheriff may have shot more than one person in times past does not necessarily imply he has ever been guilty of perpetrating a wrongful act. Many law enforcement officers are obliged to use their fire arms while carrying out acts within the scope of their duties.

Therefore, it appears to us the response of Roy Bentley was so ambiguous in its import that, when considered in connection with the admonishment of the trial court, appellant was not entitled to a discharge of the jury. See Cox v. Commonwealth, Ky., 356 S.W.2d 766; Whitaker v. Commonwealth, 297 Ky. 279, 179 S.W.2d 448; Walton v. Commonwealth, 223 Ky. 393, 3 S.W. 2d 764.

■ The next alleged error is that there was an improper separation of the jurors. See Section 244 of the Criminal Code of Practice.

There were thirteen jurors who qualified to hear this case—eight men and five women. These persons were lodged overnight in the Hatcher Hotel in Pikeville. Briefly stated, the foregoing section requires that jurors of each sex shall be kept together in the charge of proper officers. The eight men occupied four adjoining, but not connecting, rooms in the hotel on the second floor and their guard's room was next to these. The men held the keys to their rooms and could lock and unlock their doors as they pleased. The women had four adjoining, but not connecting, rooms on the first floor, and their guard, Mrs. Harriett Raney, who stayed awake all night, put up in one of these rooms with one of

these jurors. They also held the keys to their rooms.

The guards made affidavits that so far as they knew no one talked to the jurors at any time during the night. Affidavits of two hotel employees disclose that no telephone calls were received by any juror during the night; also that they did not see or hear any visitors to any room occupied by any juror. An affidavit from each juror was filed, indicating that none of them communicated with any outsider during the overnight stay. The evidence was that all doors were checked several times during the night and found locked on each occasion. It was brought out that there were no other hotel guests staying in the immediate vicinity of the rooms occupied by the jurors, and that no one went up or down the stairs after the time when the jurors were left for the night in their respective rooms by the guards.

Appellant maintains there was an opportunity afforded for the exercise of improper influence on the jury. He cites Nicholas v. Commonwealth, Ky., 286 S.W.2d 542, wherein this Court held that where jurors in a homicide prosecution were bedded down doubly in hotel rooms that did not adjoin and doors to such rooms remained open during the whole night, so that jurors were free to come and go without the necessity of passing the bed of the officer in charge, there was such separation as would require reversal of a conviction for voluntary manslaughter.

The rule to be followed in interpreting Section 244 of the Criminal Code of Practice is thus set out in Hamilton v. Commonwealth, Ky., 285 S.W.2d 156, 157:

"In construing this section, we have held that prejudicial error has been committed where there has been sufficient *opportunity* afforded for the exercise of improper influence on one or more jurors. The burden is upon the Commonwealth to show that no *opportunity* for the exercise of improper influence existed, and a mere showing

that no improper influence actually took place will not prevent a reversal where the opportunity itself has been shown." (Cases omitted.) (Emphasis added.)

We are of the opinion that the affidavits filed in this case of the thirteen jurors, the male and female jury guards and the two employees of the hotel clearly indicate there was no sufficient opportunity for any improper influence to be brought to bear upon any of the jury. Hendrickson v. Commonwealth, Ky., 259 S.W.2d 1, is a case somewhat factually analogous to the one at bar. In that case this Court declared there was no opportunity for a separation of the jury within the meaning of Section 244 of the Criminal Code of Practice. We believe that case is controlling here.

Wherefore, the judgment is affirmed.