**Donald FAUGHT, Appellant,**

**v.**

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

April 24, 1970.

Rehearing Denied June 11, 1971.

William L. Wiesman, Owensboro, for appellant.

John B. Breckinridge, Atty. Gen., James H. Barr, Asst. Atty. Gen., for appellee.

REED, Judge.

The appellant, Donald Lee Faught, was convicted by a jury of the willful murder of Bernard Nugent. The jury fixed the punishment at life imprisonment. In this appeal Faught asserts that he was wrongfully denied the opportunity to review the testimony adduced before the grand jury

that indicted him and that prejudicial error was committed during his trial. We have carefully reviewed the record and have concluded that the judgment must be affirmed.

According to the evidence introduced by the Commonwealth, Faught left a bar in Owensboro late on Saturday night and hailed a taxicab driven by White, who had been a lifelong acquaintance. They intended to go to a restaurant and eat something, after which White was to drive Faught home. During the ride in the taxicab, they observed several people in a parking lot. Faught cried out to them: "I will give you sons of bitches three minutes to go to bed." There is some conflict in the prosecution's evidence whether any reply was made. In any event, however, Faught took his shirt off and instructed White to return to the parking lot. He intended to fight. White attempted to dissuade him but Faught insisted. The cab then returned to the parking lot where Faught alighted, shirtless, and walked across the parking lot. Nugent, the victim, left the group and advanced to meet Faught. None of the witnesses saw a weapon in the possession of either Faught or Nugent. No weapon was found on the victim.

The two parties to the altercation met and clinched. Then Nugent fell backward and Faught walked away. Nugent's companions immediately discovered a stab wound in his chest and the police almost immediately arrived upon the scene. Nugent died either on his way to the hospital or very shortly after his arrival at the emergency room. A teardrop-shaped stab wound was observed and the cause of death was the severing of an artery. The police arrested Faught shortly thereafter. After the arrest, the police found a pocketknife about three or four feet from the place of arrest. The knife blade contained a substance which was later proved to be human blood.

According to Faught's testimony, he was rather drunk on the occasion in question. While he was riding in the cab, several

people in the parking lot shouted obscenities at him and he went back to fight. Nugent struck him on the forehead with a brick, after which he remembered nothing except being pulled to his feet by some unknown person. He denied possessing a knife and stated that he did not stab Nugent.

The testimony before the grand jury was taken by a stenographic reporter, who later left that employment and went to another judicial district. Appellant's motion for a copy of the grand jury transcript was sustained, but the reporter failed to furnish it. The Commonwealth's attorney made every effort to procure the transcript.

█ An indicted defendant does not possess an unqualified or absolute right to be informed concerning the testimony heard by the grand jury which accuses him of the commission of crime. In this jurisdiction, it is only in the instance where testimony before a grand jury is reported that a criminal defendant is afforded the right to receive upon proper request a copy of the transcript of such testimony. Historically, the right to know or question the evidence on which a grand jury chose to indict has been rarely extended. Under our current procedural system, the right is certainly not regarded to fall in the category of vital rights. Hence, as in other cases of denial of nonvital rights, the proper inquiry is whether the defendant was prejudiced by the denial. In this case we are convinced that he was not.

█ When the case was called for trial, appellant announced ready and raised no question concerning the absence of the grand jury transcript. Appellant had a transcript of the proceedings on the examining trial. This transcript contained the testimony on that occasion of most of the witnesses who testified for the Commonwealth at the trial in circuit court. There is no assertion that a witness who did not testify at the examining trial testified before the grand jury and then at the trial on the merits. Therefore, we are con-

vinced that this record clearly demonstrates that appellant was in no way prejudiced by the absence of the grand jury transcript.

█ The appellant also complains that his inspection of the exhibits introduced by the Commonwealth did not occur until the morning of his trial. Appellant's knowledge of the exhibits is amply demonstrated by his motion for examination of them wherein he specifically named each one. Again, there is no attempt to show prejudice in this aspect and we find no reversible error in this regard.

█ A woman who testified for the Commonwealth on cross-examination stated that since her testimony at the preliminary hearing she had sustained head injuries in an automobile accident and had been in a mental hospital. Appellant sought to have the trial judge admonish the jury not to consider her testimony. The trial judge refused to so admonish the jury. There is no claim that the witness had been adjudged incompetent. Her testimony was substantially the same as that of other eyewitnesses. People tend at times to be graphically dramatic concerning their injuries. The weight of the testimony and the credibility of the witness were the sole province of the jury. Appellant's assertion of error by reason of this occurrence is rejected.

█ Appellant also complains that although the coroner, without objection, testified at the examining trial that a blood sample taken from the deceased had been sent to the State Police Laboratory and that the laboratory reported back a blood alcohol content of .09 percent, the trial judge refused to permit the introduction of the evidence by means of cross-examination of the coroner. The test result did not establish sufficient blood-alcohol content to create a presumption that the deceased's ability to drive a car would have been affected. KRS 189.520. Appellant was apprised of the existence of the evidence at the examining trial. He had am-

ple opportunity to properly introduce it. The prosecution did not withhold or conceal relevant evidence favorable to the appellant. The manner of attempted introduction amounted to nothing more than an attempt to elicit hearsay. Tinsley v. Commonwealth, 312 Ky. 745, 229 S.W.2d 761 (1950).

◼ Prejudicial error is alleged in the introduction of three pictures of the body of the deceased showing the stab wound and in the introduction of the shirt worn by the deceased on the occasion of his death. Appellant argues that the exhibits were inflamatory and prejudicial. Appellant denies the stabbing and indeed possession of a knife on the occasion. The pictures showed the stab wound and the shirt showed the type of cut made at the point of the wound. Additional holes made in the shirt were fully explained by a technician of the FBI who performed certain test procedures on it. The exhibits, while unpleasant, are not gruesome and are relevant to the issues to be resolved. We find no error in the admission of this evidence. See Napier v. Commonwealth, Ky., 426 S.W.2d 121 (1968), and Brown v. Commonwealth, Ky., 445 S.W.2d 845 (1969).

The next error alleged is that the jury was improperly instructed. Appellant asserts that an instruction under KRS 435.-050 should have been given. The statutory offense described therein applies where one person willfully strikes or stabs another not intending to produce or cause death. The prescribed penalty is confinement in the penitentiary for not less than one nor more than six years.

◼ Appellant was indicted for willful murder. The statutory offense described in KRS 435.050 is not a degree embraced within the charge of murder. Sizemore v. Commonwealth, Ky., 347 S.W.2d 77 (1961). An antecedent statute substantially similar was held to be not a degree of the offense of homicide and under indictment for murder, the defendant could not be found guilty of this offense. See Spriggs v. Commonwealth, 113 Ky. 724, 68 S.W. 1087 (1902).

◼ In the instant case the trial court instructed on murder, voluntary manslaughter, involuntary manslaughter in both degrees, and nonintentional killing by accident. Appellant's evidence was all to the effect that he neither stabbed nor struck the victim. The statute on which appellant relies applies to an intentional act followed by an unintended result. The instructions, if anything, were more favorable to appellant than he was entitled to have given.

◼ After the jury retired, the appellant's attorney engaged in some repartee with the Commonwealth's attorney concerning the individual jurors. The defense attorney stated that one of the trial jurors would not make a move without consulting him. The Commonwealth's attorney rejoined that there was another trial juror who would not make a move without consulting him. Appellant urges that upon the voir dire all trial jurors replied that they were not clients of the Commonwealth's attorney. When this matter was considered by the trial judge pursuant to appellant's motion for a new trial, the Commonwealth's attorney testified under oath that the questioned juror was not and had not ever been a client of his. Since the voir dire was not reported and no evidence was introduced to contradict the sworn statement of the prosecutor that the trial juror's answer was correct, there is simply nothing to review on appeal so far as this point is concerned and the trial judge's ruling thereon must be regarded as correct.

Our review convinces us that appellant had a fair opportunity to answer the charge; the charge was proved by admissible evidence to the satisfaction of the jury; fair men have found appellant guilty and fixed his punishment.

The judgment is affirmed.

All concur.